Richmond

ANDERSON L. WOOLFOLK, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1173-93-2

Decided August 23, 1994

842

COUNSEL

Franklin P. Hall (Hall & Hall, on briefs), for appellant.

Margaret Ann B. Walker, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

FITZPATRICK, J.—Anderson L. Woolfolk, Jr. (appellant) was convicted in a jury trial of stalking in violation of Code § 18.2-60.3 (1992). On appeal, he argues that the statute is unconstitutionally vague and overbroad. In addition, appellant contends that even if the statute is valid, there is insufficient evidence to sustain his conviction. For the reasons set forth below, we find Code § 18.2-60.3 (1992) valid and the evidence sufficient to convict. Accordingly, we affirm.

## BACKGROUND

Under well-established principles of appellate review, we restate the evidence in the light most favorable to the Commonwealth. Jane Woolfolk, the victim in this case, divorced appellant in June 1991, after fifteen years of marriage. Ms. Woolfolk retained cus-

tody of the two minor children born of the marriage, and the final decree of divorce granted appellant the right "to see and visit with the children at reasonable times and places." By mid-July 1992, Ms. Woolfolk, acting upon the recommendation of appellant's psychologist, suspended all contact and communication between appellant and the children.

Following appellant's separation from Ms. Woolfolk in 1987, he engaged in a pattern of conduct that frequently involved following her and maintaining surveillance on her residence.

In the summer of 1992, after Ms. Woolfolk began dating Bill Carter, appellant's surveillance activities increased dramatically. These activities included driving up and down the dead-end street where Ms. Woolfolk lived, parking within sight of the residence, and watching the house for extended periods of time. These activities occurred at both day and night. In addition, appellant followed Ms. Woolfolk or her guests on several occasions with his vehicle. In July 1992, Ms. Woolfolk was "alarmed" after discovering appellant had followed her to an out-of-town wedding she had attended with a female neighbor.

On August 11, 1992, someone let the air out of a tire on Mr. Carter's car while the car was parked in Ms. Woolfolk's driveway. Thereafter, appellant was served with a "no trespass" notice, forbidding him from coming in or upon Ms. Woolfolk's premises. Appellant continued to drive past or park near Ms. Woolfolk's residence.

On September 19, 1992, at 7:00 a.m., Mr. Carter awoke to a telephone call from a male caller who stated, "If you don't stop seeing her, I'm going to shoot both your asses." At trial, Mr. Carter testified that he was dating only Ms. Woolfolk during this period of time and that he recognized the caller's voice as appellant's. After Mr. Carter received the call, he contacted Ms. Woolfolk and informed her of appellant's threat. The next day, Mr. Carter saw appellant drive through his, Mr. Carter's, Fredricksburg apartment complex, forty miles from appellant's Louisa County residence.

On September 21, 1992, at approximately 10:00 p.m., two days after the threatening telephone call, Ms. Woolfolk saw appellant's unoccupied car parked near her home. Charlta H. Richardson,

one of Ms. Woolfolk's neighbors, testified that she saw appellant drive down the street several times that night. Ms. Woolfolk became upset and feared that appellant was somewhere near her home on foot. Throughout the following week, appellant continued to park near or in sight of Ms. Woolfolk's home. He was within view of her residence every day from September 24 until the date of his arrest on September 28, 1992.

The evidence established that in response to appellant's threat and course of conduct, Ms. Woolfolk carried tear gas in her purse, had motion detector lights installed on the outside of her home, and "slept with a hammer" beside her bed. She watched for appellant everywhere she went and, on one occasion, she obtained a police escort when she drove Mr. Carter's car back to Fredricksburg.

Appellant denied making the threatening telephone call to Mr. Carter. He stipulated at trial that he was frequently within view of Ms. Woolfolk's home, that he followed Mr. Carter and that he drove through Mr. Carter's apartment complex on September 20, 1992. However, appellant argues that he engaged in all these activities to monitor his children's environment and prepare for a future custody hearing.

## SUFFICIENCY OF THE EVIDENCE

■ Generally, we decide constitutional questions only when necessary to the appropriate disposition of the case. Accordingly, we first address appellant's challenge to the sufficiency of the evidence to support his conviction. *See Bissell v. Commonwealth*, 199 Va. 397, 400, 100 S.E.2d 1, 3 (1957). "When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted). Further, "[t]he weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." *Bridgeman v. Commonwealth*, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986).

Appellant argues that the Commonwealth failed to prove that he acted with the intent to cause emotional distress, and that "[a] fair reading of the record in this case reveals nothing more than a father who was worried and concerned about his children."

■ We reject this contention. The jury was entitled to disbelieve appellant's explanation that he acted only out of concern for his children. *See Speight v. Commonwealth*, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc). Further, "[t]he mere possibility that the accused might have had another purpose than that found by the fact finder is insufficient to reverse the conviction." *Bell v. Commonwealth*, 11 Va. App. 530, 534, 399 S.E.2d 450, 452-53 (1991).

■ The Commonwealth proved beyond a reasonable doubt that appellant acted with a specific intent when he engaged in his pattern of "stalking" conduct. *See* Code § 18.2-60.3 (1992). " '[S]pecific intent may, like any other fact, be shown by circumstances. Intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it.' " *Bell*, 11 Va. App. at 533, 399 S.E.2d at 452 (quoting *Banovitch v. Commonwealth*, 196 Va. 210, 216, 83 S.E.2d 369, 373 (1954)). "A person's conduct may be measured by its natural and probable consequences. The finder of fact may infer that a person intends the natural and probable consequences of his acts." *Campbell v. Commonwealth*, 12 Va. App. 476, 484, 405 S.E.2d 1, 4 (1991) (citation omitted).

The evidence proved that appellant stalked his ex-wife. From mid-summer 1992 until his arrest in September 1992, he persistently followed Ms. Woolfolk. He watched her in her home at all hours of the day and night, and even began to follow her boyfriend, Mr. Carter, who lived in Fredricksburg. Appellant threatened to shoot Ms. Woolfolk and Mr. Carter. He followed this threat by driving through Mr. Carter's apartment complex and repeatedly driving by Ms. Woolfolk's residence. Ms. Woolfolk testified that appellant's threat, combined with his persistent course of conduct, "terrified" her. In addition, she believed that appellant wanted to shoot or kill her.

From these facts and circumstances, the jury could properly find that appellant, on more than one occasion and with no legitimate purpose, engaged in conduct intended to cause his ex-wife to

suffer the specific emotional distress generated by placing her in reasonable fear of death or bodily injury. *See Ridley v. Commonwealth*, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979) ("[i]ntent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case"). Whether appellant acted with the requisite specific intent was a question for the jury. In evaluating the jury's decision in the light most favorable to the Commonwealth, based on the evidence presented in this case, we cannot say that the verdict was plainly wrong or without evidence to support it. *Hancock v. Commonwealth*, 12 Va. App. 774, 783, 407 S.E.2d 301, 306 (1991) (citations omitted). Accordingly, we find the evidence sufficient to convict.

## VAGUENESS

Appellant next argues that Code § 18.2-60.3 (1992) is unconstitutionally vague. The statute in effect in September 1992, provided, in part:

> Any person who on more than one occasion engages in conduct with the intent to cause emotional distress to another person by placing that person in reasonable fear of death or bodily injury shall be guilty of a Class 2 misdemeanor.

Code § 18.2-60.3(A) (1992).[1] Appellant argues, *inter alia*, that "the statutory phrase 'intent to cause emotional distress' is hopelessly vague in that it fails to appraise a potential defendant of what sort of conduct might violate its terms." We disagree.

As a threshold matter, the Commonwealth argues that appellant lacks standing to make a vagueness challenge to former Code § 18.2-60.3 (1992) because "an allegation that a statute is unconstitutionally vague cannot be lodged by one who has engaged in conduct 'clearly proscribed' by the statute." We have previously considered and rejected this argument in *Perkins v. Common-*

---

[1] Code § 18.2-60.3 was amended by the General Assembly during the 1994 regular session. The current statute provides, in part:

> Any person who on more than one occasion engages in conduct directed at another person with the intent to place, or with the knowledge that the conduct places, that other person in reasonable fear of death, criminal sexual assault, or bodily injury to that other person or to that other person's spouse or child shall be guilty of a Class 2 misdemeanor.

*wealth*, 12 Va. App. 7, 402 S.E.2d 229 (1991), where we held that a defendant had standing to challenge the statutes in question on overbreadth and vagueness grounds. *Id.* at 12, 402 S.E.2d at 232; *see also Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983).

■ We reject appellant's contention that the term "emotional distress" is "hopelessly vague." "In determining whether a legislative enactment is unconstitutionally vague, the Supreme Court [of the United States] has considered whether the words used have a well-settled common-law meaning, and whether the state's case law demonstrates that the language used, while otherwise vague, has been judicially narrowed." *Flannery v. City of Norfolk*, 216 Va. 362, 366, 218 S.E.2d 730, 733 (1975), *appeal dismissed*, 424 U.S. 936 (1976) (citations omitted). The term "emotional distress" is a common and well-recognized legal term that has been judicially narrowed by existing Virginia law. *See Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 162 (1991); *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974).

■ When statutory construction is required, we construe a statute to promote the end for which it was enacted, if such an interpretation can reasonably be made from the language used. *VEPCO v. Board of County Supervisors*, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983); *Harris v. Commonwealth*, 142 Va. 620, 625, 128 S.E. 578, 579 (1925). Generally, the words and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest. *See Huffman v. Kite*, 198 Va. 196, 199, 93 S.E.2d 328, 331 (1956).

The ordinary meaning of distress is as follows:

Distress commonly implies conditions or circumstances that cause physical or mental stress or strain, suggesting strongly the need for assistance; in application to a mental state, it implies the strain of fear, anxiety, shame or the like.

*Webster's Third New International Dictionary* 660 (1981). In addition, Dorland's Medical Dictionary defines distress as: "physical or mental anguish or suffering." *Dorland's Illustrated Medical Dictionary* 398 (26th ed. 1981).

■ The Supreme Court of Virginia has also discussed the meaning of the term "emotional distress" in the context of civil tort actions. Former Code § 18.2-60.3 (1992) imposes criminal liability for specific conduct that, in the civil arena, could give rise to a claim for damages for the intentional infliction of emotional distress. Those cases which define the elements of the tort of the intentional infliction of emotional distress are instructive as to the intended meaning of the term "emotional distress" used in former Code § 18.2-60.3. In *Russo*, the Supreme Court of Virginia explained:

> The term "emotional distress" travels under many labels, such as, "mental suffering, mental anguish, mental or nervous shock. . . ." But *liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it.*

*Russo*, 241 Va. at 27, 400 S.E.2d at 163 (quoting Restatement (Second) of Torts § 46, comment j (1965)) (emphasis added). *See also Ruth v. Fletcher*, 237 Va. 366, 368, 377 S.E.2d 412, 413 (1989) (liability found only where the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality). Accordingly, we construe the term "emotional distress" as used in former Code § 18.2-60.3 to mean the suffering or mental anguish that arises from being placed in reasonable fear of death or bodily injury and is so severe that no reasonable person could be expected to endure it.

■ "In assessing the constitutionality of a statute, we must presume that the legislative action is valid. The burden is on the challenger to prove the alleged constitutional defect." *Perkins*, 12 Va. App. at 14, 402 S.E.2d at 233 (citing *Coleman v. City of Richmond*, 5 Va. App. 459, 462, 364 S.E.2d 239, 241, *reh'g denied*, 6 Va. App. 296, 368 S.E.2d 298 (1988)). *See also United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963); *Almond v. Day*, 197 Va. 782, 794, 91 S.E.2d 660, 669 (1956). Further, "we may construe our statutes to have a limited application if such a construction will tailor the statute to a constitutional fit." *Coleman*, 5 Va. App. at 462, 364 S.E.2d at 241.

■ "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with suffi-

cient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 357. In *Grayned v. City of Rockford*, 408 U.S. 104 (1972), the Supreme Court of the United States explained that:

> [criminal] laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Id.* at 108-09 (footnote omitted). However, "[i]f the terms of the statute, when measured by common understanding and practices, sufficiently warn a person as to what behavior is prohibited, then the statute is not unconstitutionally vague." *Stein v. Commonwealth*, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991) (citations omitted).

We conclude that former Code § 18.2-60.3 gave fair notice of the proscribed activity and is not unconstitutionally vague. Appellant reads the statute as proscribing all conduct done with the intent to cause the victim to suffer *any type* of emotional distress. In addition, appellant contends that the statute creates a subjective standard requiring "a potential defendant to engage in sheer guesswork as to whether his actions will cause 'emotional distress' or not in each specific case." By attempting to interpret each word separately, instead of reading the statute as a whole, appellant has misconstrued the clear meaning of former Code § 18.2-60.3.[2]

In our view, the statute does not create a subjective standard, but in fact creates a "reasonable person" standard, and therefore, the proscribed conduct does not vary with the particular psychological makeup of the victim. In addition, the statute prohibits only conduct engaged in with the intent to cause the specific emotional distress generated by placing a victim in reasonable fear of

---

[2] It is a well settled principle of statutory construction that the whole body of a statute should be examined to determine the true intention of each part. "[A] statute is not to be construed by singling out a particular phrase." *VEPCO v. Citizens for Safe Power*, 222 Va. 866, 869, 284 S.E.2d 613, 615 (1981) (citation omitted).

death or bodily injury.[3] The statute's application is further narrowed by our interpretation that the emotional distress contemplated by former Code § 18.2-60.3 must be so severe that no reasonable person could be expected to endure it. In addition, the statute requires that the Commonwealth prove that an accused engaged in such activity "on more than one occasion."

In *Colten v. Kentucky*, 407 U.S. 104 (1972), the Supreme Court of the United States explained as follows:

The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Id.* at 110. Accordingly, "no more than a reasonable degree of certainty can be demanded." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952). Here, the clear legislative intent of former Code § 18.2-60.3 was to stop serious threatening and harassing conduct before it escalated into violence. As Professor Tribe has noted, "the legislature confronts a dilemma: to draft with narrow particularity is to risk nullification by easy evasion of the legislative purpose; to draft with great generality is to risk ensnarement of the innocent in a net designed for others." Lawrence H. Tribe, *American Constitutional Law* § 12-31, at 1033 (2d ed. 1988) (footnote omitted).

As a practical matter, it is impossible to draft legislation delineating every possible act of stalking that would provide adequate protection for potential victims without infringing upon our

---

[3] "[T]he maxim '*noscitur a sociis*,' which translates 'it is known from its associates,' provides that the meaning of a word takes color and expression from the purport of the entire phrase of which it is a part, and it must be read in harmony with its context." *Turner v. Commonwealth*, 226 Va. 456, 460, 309 S.E.2d 337, 339 (1983). Here, the general words "intent to cause emotional distress" are qualified by the related phrase "by placing that person in reasonable fear of death or bodily injury." Code § 18.2-60.3. "[W]hen general words and specific words are grouped together, the general words are limited and qualified by the specific words and will be construed to embrace only objects similar in nature to those objects identified by the specific words." *Commonwealth v. United Airlines, Inc.*, 219 Va. 374, 389, 248 S.E.2d 124, 132-33 (1978). *See also Cape Henry Towers, Inc. v. National Gypsum Co.*, 229 Va. 596, 601, 331 S.E.2d 476, 479 (1985).

constitutional freedoms. Former Code § 18.2-60.3 struck an appropriate balance between these two concerns by requiring proof beyond a reasonable doubt that an accused acted with a specific intent. "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *National Dairy Products Corp.*, 372 U.S. at 33 (citation omitted). *See also Parker v. Levy*, 417 U.S. 733, 757 (1974). By requiring a specific intent in conjunction with more than one overt act, the statute gives a person of ordinary intelligence a reasonable opportunity to know what is proscribed. *See Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 495 (1982); *see also Boyce*, 342 U.S. at 342 (requirement of specific intent does much to destroy any force in argument that application of statute would be unfair or that complainant would not know his conduct is proscribed); *Screws v. United States*, 325 U.S. 91 (1945) (specific intent element counters vagueness challenges). Accordingly, we find that appellant failed to prove that former Code § 18.2-60.3 is void for vagueness.

## OVERBREADTH

Appellant also contends that former Code § 18.2-60.3 is unconstitutionally overbroad. "An overbroad statute is one that is designed to burden or punish activities which are not constitutionally protected, but the statute includes within its scope activities which are protected by the First Amendment." *Hill v. City of Houston*, 764 F.2d 1156, 1161 (5th Cir. 1985) (footnote omitted), *cert. denied*, 483 U.S. 1001 (1987). However, the overbreadth doctrine, which is designed to guard against laws that interfere with activities protected by the First Amendment, is not without limitation.

In *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), the Supreme Court of the United States ruled that "substantial overbreadth" may be required to invoke the doctrine, particularly where speech is joined with conduct:

[The function of the overbreadth doctrine is] a limited one at the outset, [and] attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining compre-

hensive controls over harmful, constitutionally unprotected conduct. . . . To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

*Id.* at 615.

Former Code § 18.2-60.3 was designed to proscribe certain impermissible conduct and not speech.

[T]he mere fact that one can conceive of some impermissible application of a statute is not sufficient to render it susceptible to an overbreadth challenge; . . . there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court for [the statute] to be facially challenged on overbreadth grounds.

*City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984) (citations omitted) (footnote omitted). *See also Perkins*, 12 Va. App. at 15-16, 402 S.E.2d at 234. No such "realistic danger" is present in this case.

■ Appellant argues that former Code § 18.2-60.3 is broad enough to reach constitutionally protected activities. While we do not agree with appellant's construction of the statute, it is well settled that "[i]f a statute can be made constitutionally definite by a reasonable construction, the court is under a duty to give it that construction." *Pedersen v. City of Richmond*, 219 Va. 1061, 1065, 254 S.E.2d 95, 98 (1979). Applying this principle, we read former Code § 18.2-60.3 as proscribing only conduct *having no legitimate purpose* engaged in with the intent to cause the specific emotional distress generated by placing a victim in reasonable fear of death or bodily injury. Such a narrowing construction is not strained and prevents the possibility of overbreadth. Beyond all reasonable doubt, appellant's conduct violated the terms of the statute as herein construed. Because we find that former Code § 18.2-60.3 is directed primarily at conduct that has no legitimate purpose and, if directed at speech then without regard to its content, we conclude that appellant has not shown any overbreadth of the statute that is "substantial . . . judged in relation to the

statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615. Accordingly, appellant's overbreadth challenge to former Code § 18.2-60.3 must fail.

## CONCLUSION

For the reasons set forth above, we find that former Code § 18.2-60.3 is neither unconstitutionally vague nor overbroad. Also, the evidence is sufficient to prove that appellant violated the statute as we have interpreted it in this opinion. Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Moon, C.J., and Hodges, S.J., concurred.