**SALT LAKE CITY, Plaintiff and Appellee,**

v.

**Roberto LOPEZ, Defendant and Appellant.**

No. 960153–CA.

Court of Appeals of Utah.

March 27, 1997.

David V. Finlayson, Salt Lake City, for Defendant and Appellant.

Virginia B. Ward, Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, BENCH and GREENWOOD, JJ.

BENCH, Judge:

Defendant seeks reversal of his conviction for stalking, a class B misdemeanor, in violation of Utah Code Ann. § 76–5–106.5 (1995). Defendant contends the stalking statute is unconstitutionally overbroad on its face and as applied to him, as well as unconstitutionally vague on its face. We affirm.

## BACKGROUND

On appeal from a jury verdict, we restate the evidence in a light most favorable to the jury's verdict. *See State v. Vigil,* 922 P.2d 15, 18 (Utah.Ct.App.1996).

Several years ago, when defendant was approximately twenty-five years old, he met G.M.M., who was then approximately thirteen years old. In subsequent years, defendant expressed romantic interest in G.M.M., although she rebuffed any such relationship with defendant. G.M.M. and her parents told defendant to leave her alone. When this conduct did not stop, G.M.M. had a private attorney send a letter to defendant advising him not to have any contact with her. She also obtained a no-contact order from the Third Circuit Court prior to the incidents charged in this case.

Despite these efforts, defendant continued to contact G.M.M. On December 31, 1993,

defendant attended a dance held in a community hall where G.M.M. and her parents were present. While G.M.M. was dancing with another young man, defendant approached her and took the fist of his right hand and struck it into his open left hand, told her that he loved her, and stared at her before leaving.

In May 1994, while G.M.M. was driving her car on a local street, defendant made a U-turn in his car and followed G.M.M.'s vehicle for a few blocks. G.M.M. testified that defendant "drove really fast" by her car then pulled in front of her to see if she would hit his car. He then drove off. A few days later, defendant approached G.M.M. and a male acquaintance outside West High School and told her he wanted to talk to her. G.M.M. told defendant she did not want to talk to him and hurried away.

In June 1994, defendant attended G.M.M.'s high school graduation held at Abravanel Hall. G.M.M. and her family saw defendant in the balcony and alerted Officer Terri Morgan, who was assigned to West High School. Officer Morgan knew defendant from a previous incident when, after G.M.M. told Officer Morgan defendant was in the school parking lot, Officer Morgan advised defendant he was trespassing and to stay away from G.M.M. When confronted at the graduation exercises, defendant admitted to Officer Morgan that he was looking for G.M.M. and needed to find her.

Later in June, G.M.M.'s brother saw defendant on their street while G.M.M. was home. A few days later, defendant called G.M.M., but she told him she did not want to talk to him. On June 22, 1994, defendant appeared at the department store where G.M.M. was employed and told her, "you better talk to me," whereupon G.M.M. ran up the escalator.

G.M.M. testified that she was fearful of defendant and had nightmares of the things she thought he might do to her. She also testified that she was afraid to attend school activities or other social events because defendant might harass her.

Defendant was charged with the crime of stalking, and he filed a pretrial motion challenging the constitutionality of the stalking statute. The trial court denied defendant's motion and, following a jury trial, he was convicted.

## STANDARD OF REVIEW

The challenge to the constitutionality of a statute presents a question of law, which we review for correctness. *See Ross v. Schackel,* 920 P.2d 1159, 1162 (Utah 1996); *Ryan v. Gold Cross Servs., Inc.,* 903 P.2d 423, 424 (Utah 1995).

## ANALYSIS

■ Defendant contends Utah Code Ann. § 76–5–106.5 (1995) is: (1) unconstitutionally overbroad on its face and as applied to him because it infringes on his constitutional freedoms of association and movement under the First and Fourteenth Amendments to the United States Constitution and article I, sections 1 and 15 of the Utah Constitution;[1] and (2) unconstitutionally vague on its face because of its failure to define "emotional distress." "[W]hen reviewing statutes for constitutionality, a statute is presumed constitutional, and 'we resolve any reasonable doubts in favor of constitutionality.'" *Ryan,* 903 P.2d at 424 (quoting *Society of Separationists, Inc. v. Whitehead,* 870 P.2d 916, 920 (Utah 1993)).

### I. Overbreadth

■ Defendant contends the stalking statute is unconstitutionally overbroad on its

---

1. While defendant cites the Utah Constitution and points out the syntax differences from the First Amendment, he cites no authority, history, or other basis articulating how or why the Utah Constitution was intended to provide broader freedoms than the First Amendment. We therefore analyze this case under the federal constitu-

tion only. *See Elks Lodges #719 & #2021 v. Department of Alcoholic Beverage Control,* 905 P.2d 1189, 1193 n. 1 (Utah 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1850, 134 L.Ed.2d 950 (1996); *Provo City Corp. v. Willden,* 768 P.2d 455, 456 n. 2 (Utah 1989).

face. Defendant urges that the First Amendment rights infringed upon by the stalking statute are freedom of association and freedom of movement. *See Elks Lodges #719 & #2021 v. Department of Alcoholic Beverage Control,* 905 P.2d 1189, 1193–95 (Utah 1995) (explaining First Amendment right to free association), *cert. denied,* —— U.S. ——, 116 S.Ct. 1850, 134 L.Ed.2d 950 (1996); *see also Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983) (citing "constitutional right to freedom of movement").

■ "Statutory language is overbroad if its language proscribes both harmful and innocuous behavior. Stated another way, a statute is overbroad if it attempts to sanction constitutionally protected activities." *Elks Lodges,* 905 P.2d at 1203. A statute is not unconstitutionally overbroad unless it renders unlawful a substantial amount of constitutionally protected conduct. *See Logan City v. Huber,* 786 P.2d 1372, 1375 (Utah.Ct. App.1990). "[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). The overbreadth doctrine has not been recognized outside the limits of the First Amendment. *See United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987).

The stalking statute in effect at the time defendant was charged provided, in relevant part, as follows:

(1) As used in this section:

(a) "Course of conduct" means repeatedly maintaining a visual or physical proximity to a person or repeatedly conveying verbal or written threats or threats implied by conduct or a combination thereof directed at or toward a person.

(b) "Immediate family" means a spouse, parent, child, sibling, or any other person who regularly resides in the household or who regularly resided in the household within the prior six months.

(c) "Repeatedly" means on two or more occasions.

(2) A person is guilty of stalking who:

(a) intentionally or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person:

(i) to fear bodily injury to himself or a member of his immediate family; or

(ii) to suffer emotional distress;

(b) has knowledge or should have knowledge that the specific person:

(i) will be placed in reasonable fear of bodily injury to himself or a member of his immediate family; or

(ii) will suffer emotional distress; and

(c) whose conduct:

(i) induces fear in the specific person of bodily injury to himself or a member of his immediate family; or

(ii) causes emotional distress in the specific person.

Utah Code Ann. § 76–5–106.5 (1995).

■ Defendant contends that the statute is so broadly written that it criminalizes innocent conduct such as when a defendant merely maintains a repeated visual proximity to a specific person with the knowledge that such conduct would cause a reasonable person to be upset or emotionally distressed—without any requirement of a credible threat. Defendant offers as an example of innocent behavior that would be punishable, a divorced couple in which one of the parties gets upset at the sight or presence of the other, yet some limited contact is necessary because of child visitation or because both parties will attend a child's activities.[2]

■ First of all, the conduct in question in defendant's hypotheticals, e.g., picking up a

---

**2.** In the First Amendment area, the overbreadth doctrine gives a defendant standing to challenge a statute on behalf of others not before the court even if the law could be constitutionally applied

child for visitation or attending a child's performance, is not typically a course of conduct "directed at" causing another person emotional distress. Limited contact during legitimate innocent encounters such as picking up children, without conduct directed at causing physical harm or emotional distress to an intended person, does not fall under the statute's purview.

Additionally, the emotional distress element is not satisfied by causing mere anxiety or annoyance. Defendant asserts that the lack of definition of "emotional distress" in the statute renders it both overbroad and vague. However, the tort of intentional infliction of emotional distress is well established in this state. Emotional distress results from conduct that is "outrageous and intolerable in that it offends the generally accepted standards of decency and morality." *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 905 (Utah 1992). Several courts have defined "emotional distress" in stalking statutes by looking to the definition provided in civil cases. *See State v. Martel*, 273 Mont. 143, 902 P.2d 14, 19 (1995); *Woolfolk v. Commonwealth*, 18 Va.App. 840, 447 S.E.2d 530, 533 (1994); *Luplow v. State*, 897 P.2d 463, 468 (Wyo.1995). The innocent situations defendant describes do not rise to the level of outrageous and intolerable conduct that would reasonably cause "emotional distress."

Further, the statute does not make unlawful a substantial amount of association and movement. *See Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2918. The statute is narrowly drafted to restrict only threatening behavior, with limited infringement on rights to free association and movement. Under the statute, conduct is not criminal unless it is repeated (specifically defined as two or more occasions), and the defendant "intentionally or knowingly engages in a course of conduct" that is "directed at a specific person" such that a "reasonable person" would suffer emotional distress, and the defendant knows or

should know that the specific person will suffer emotional distress. Utah Code Ann. § 76-5-106.5(2) (1995). The restrictions this statute may impose on a person's ability to move about and associate freely are limited and justified by the state's compelling interest in protecting its citizens from threatening or harmful behavior.

The facial overbreadth doctrine is a limited doctrine to begin with and attenuates further as the prohibited behavior moves from pure speech towards conduct that, even if expressive, may be properly restricted as a legitimate state interest. *See Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917. Free association exists on a continuum, and can be regulated by the state for compelling interests. *See Elks Lodges*, 905 P.2d at 1195. The statute here is comparable to stalking statutes that have been upheld in other states. *See generally* Beth Bjerregaard, *Stalking and the First Amendment: A Constitutional Analysis of State Stalking Laws*, 32 Crim. L. Bull. 307 (1996) (comparing and analyzing constitutionality of state stalking statutes). We are not persuaded that the statute infringes on a substantial amount of constitutionally protected conduct. Therefore, defendant's facial overbreadth challenge fails.

The statute is also not unconstitutionally overbroad as applied to defendant. In this case, defendant persisted in making unwanted contact with G.M.M. after he knew that G.M.M. and her parents did not want him to contact her. The contact continued after G.M.M. had a private attorney advise defendant to stay away, and after she successfully obtained a no-contact order from the circuit court. Thereafter, defendant had numerous contacts with G.M.M. that reasonably would cause her emotional distress. Defendant was not prosecuted for merely being in G.M.M.'s presence; he was prosecuted for causing emotional distress to G.M.M. and engaging in behavior directed at

to the defendant. *See Bigelow v. Virginia*, 421 U.S. 809, 816, 95 S.Ct. 2222, 2230, 44 L.Ed.2d 600 (1975); *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).

her that could reasonably be understood as threatening. We cannot say that the statute is overbroad as applied to defendant.

## II. Vagueness

■ Defendant claims the stalking statute is facially vague for failing to define "emotional distress." "The void-for-vagueness doctrine requires that a statute or ordinance define an 'offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Greenwood v. City of North Salt Lake,* 817 P.2d 816, 819 (Utah 1991) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). Defendant must show that the statute is totally invalid and " 'incapable of any valid application.'" *Id.* (quoting *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974)).

We disagree with defendant's contention that the statute is void for vagueness for failing to define emotional distress. As explained above, emotional distress is well defined in this state and the definition's absence from the statute does not render the statute unconstitutionally vague. Several other courts have similarly so held. *See State v. Martel,* 273 Mont. 143, 902 P.2d 14, 19 (1995); *Woolfolk v. Commonwealth,* 18 Va.App. 840, 447 S.E.2d 530, 533 (1994); *Luplow v. State,* 897 P.2d 463, 468 (Wyo.1995).

■ Defendant knew that his contact with G.M.M. was unwanted and that she felt threatened by it. Defendant's "knowledge" that his conduct made G.M.M. feel threatened or distressed is an element of the crime. *See* Utah Code Ann. § 76–5–106.5(2)(a) (1995). "The fact that the statute creates a specific intent requirement significantly vitiates any claim that its purported vagueness could mislead a person of common intelligence into misunderstanding what is prohibited." *State v. Culmo,* 43 Conn.Supp. 46, 642 A.2d 90, 98 (1993).

■ Moreover, unlike a facial overbreadth challenge, a person " 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.'" *Greenwood,* 817 P.2d at 820 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnotes omitted in original)). Again, defendant knew G.M.M. did not want contact with him, yet he repeatedly made threatening contact with her, even after the court had issued the no-contact order. Given defendant's knowledge and conduct, he cannot claim the statute is vague as applied to him, let alone that the statute is totally invalid and incapable of any valid application. *See id.* at 819–20.

## CONCLUSION

We conclude Utah Code Ann. § 76–5–106.5 (1995) does not render a substantial amount of constitutionally protected activity unlawful. Therefore, the statute is not unconstitutionally overbroad on its face, nor is it unconstitutionally overbroad as applied to defendant. We also conclude that section 76–5–106.5 is not unconstitutionally vague on its face for failing to define "emotional distress."

Affirmed.

WILKINS, Associate P.J., and GREENWOOD, J., concur.