2002 UT App 434

**STATE of Utah, Plaintiff and Appellee,**

v.

**Andrew WEISBERG, Defendant and Appellant.**

No. 20001056–CA.

Court of Appeals of Utah.

Dec. 27, 2002.

Ronald J. Yengich and Vanessa Ramos–Smith, Yengich Rich & Xaiz, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Marian Decker, Assistant Attorney General, for Appellee.

Before Judges DAVIS, GREENWOOD, and THORNE.

## OPINION

THORNE, Judge:

¶1 Andrew Weisberg appeals his conviction for stalking, a second degree felony. We affirm.

## BACKGROUND [1]

¶2 In 1997, Andrew Weisberg entered into a transaction that required the services of Avis and Archibald Title Company (AATC), where Robin Archibald was a partner. The business deal was unsuccessful and Weisberg blamed the failure on Archibald. Weisberg subsequently sued AATC and Archibald, alleging that each breached a duty of care to him. The parties eventually reached a settlement, but Weisberg's animosity toward Archibald did not subside.

¶3 In August 1997, Archibald received a fax from Weisberg's company that read: "Liar, Liar, pants on fire." At the same time, Archibald started receiving harassing phone calls at her business, at least one of which included a threat on her life. Around this time, Archibald also noticed that Weisberg would drive into AATC's parking lot on a regular basis, slow down, stare into her glass-fronted office, and then drive away.

¶4 In October 1997, while Archibald was working late, she looked out of her office window and noticed Weisberg sitting in his truck watching her from the parking lot. Archibald called the police, but Weisberg left before the police arrived.

¶5 Soon thereafter, the police contacted Weisberg and informed him that he was being watched and that he should change his behavior or stalking charges would be filed. Weisberg, however, continued to frequent the AATC parking lot. At times, Weisberg would patronize the businesses located around AATC, but at other times he would simply sit in his car and stare into AATC's front window, or would walk the sidewalk in front of AATC and stare inside.

¶6 In April 1998, Archibald encountered Weisberg outside a local restaurant. Before entering, Archibald noticed Weisberg pull his cell phone out of his breast pocket in such a manner that Archibald suspected he might have a gun. Frightened, Archibald hurriedly entered the restaurant. Weisberg followed closely behind and, upon entering the restaurant, hit his hand on the door making a startling noise. Once inside the restaurant, Weisberg briefly sat down with Dennis Porter, who was also eating in the restaurant. Weisberg then stood up abruptly, walked past Archibald making an offensive gesture, and exited the restaurant. After Weisberg left, Porter approached Archibald and asked her what she had done to so anger Weisberg. Later, Porter told police Weisberg had told him that he wanted to hire some men to rape Archibald, that if Archibald were alone he would run her over with his truck and then back over her to make sure she was dead, and that he would like to see Archibald's head on a platter.

¶7 In June 1999, while driving on Highway 89, Archibald again encountered Weis-

1. We present the facts and all reasonable inferences drawn therefrom "in the light most favorable to the jury verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Bluff,* 2002 UT 66,- ¶2, 52 P.3d 1210.

berg as he drove parallel to her car and stared at her. Frightened, Archibald pulled into a parking lot and called the police. A police officer responded to the call and, upon arrival, observed Weisberg standing in a nearby store staring at Archibald. The officer approached Weisberg and questioned his behavior. Weisberg denied that he was following Archibald.

¶ 8 In August 1999, Weisberg's appearances in the AATC parking lot increased, until, finally, on August 25th, Weisberg signed a diversion agreement, agreeing that he would have no more contact with Archibald. However, in December 1999, employees at AATC called the police to again report that Weisberg was in the parking lot. They reported that he had been approaching AATC's front window and staring inside. The police approached Weisberg and asked him to leave. Weisberg became angry and then insisted that he was in the parking lot solely to protest AATC's business practices. He then picked up a picket sign and began to picket. The police did not interfere with his protest.

¶ 9 Three days later, Weisberg again entered the AATC parking lot. Weisberg stopped his car directly behind Archibald's car, which was parked in front of AATC, in a fashion that would have prevented Archibald from moving her car. His car was facing away from the building, with the trunk facing AATC. Weisberg got out of his car and briefly walked into the dry cleaner next door to AATC. However, he neither dropped off nor received any clothing.

¶ 10 Weisberg soon returned to his car and, using the driver-side release button, opened his trunk. He then opened the passenger door of his car and removed a pistolgrip shotgun from the passenger compartment. He lifted the shotgun from the car with the pistol-grip in his right hand and the barrel in his left hand. With the shotgun in his hands, Weisberg looked toward AATC and walked both toward the rear of his car and directly toward AATC's front window. Weisberg then placed the shotgun in the trunk, closed the trunk, and drove away. AATC employees called the police. Later that day, while picketing in front of AATC,

Weisberg was arrested and charged with stalking.

¶ 11 Following a jury trial, Weisberg was convicted of stalking, a second degree felony, in violation of Utah Code Ann. § 76–5–106.5(2) (1996). The trial court then sentenced Weisberg to an indeterminate term of not less than one year and not more than fifteen years. Weisberg filed a motion to arrest judgment, which was denied. Weisberg now appeals.

## ISSUES AND STANDARDS OF REVIEW

▉ ¶ 12 Weisberg first argues that the trial court improperly instructed the jury concerning the definition of "use of a weapon." "A challenge to a jury instruction as incorrectly stating the law presents a question of law, which we review for correctness." *State v. Lucero,* 866 P.2d 1, 3 (Utah Ct.App. 1993).

▉ ¶ 13 Weisberg also argues that the trial court improperly denied his request to arrest judgment pursuant to rule 23 of the Utah Rules of Criminal Procedure.

> When reviewing any challenge to a trial court's denial of arrest of judgment, we review the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the jury verdict. We will sustain the trial court's decision unless the jury verdict is so inconclusive or so inherently improbable as to an element of the crime that all reasonable minds must entertain a reasonable doubt.

*State v. Colwell,* 2000 UT 8, ¶ 11, 994 P.2d 177.

▉ ¶ 14 Weisberg next argues that Utah Code Ann. § 76–5–106.5(2) (2000) is unconstitutional. "The challenge to the constitutionality of a statute presents a question of law, which we review for correctness." *Salt Lake City v. Lopez,* 935 P.2d 1259, 1262 (Utah Ct.App.1997).

## ANALYSIS

¶ 15 Weisberg first argues that the trial court improperly instructed the jury on "use of a dangerous weapon" when it stated:

Use of a dangerous weapon is defined as bringing or putting it into service or action or to put it to some purpose. If you find that a firearm is a dangerous weapon in this case, then its use may include, but is not limited to the following: pointing it at a person, shooting it, or exhibiting it in such a manner that it creates fear in a reasonable person.

Weisberg objected to the portion of the instruction that equated "use" to "exhibiting [a weapon] in such a manner that it creates fear in a reasonable person." Weisberg argues that this portion of the instruction incorrectly stated the law, because it did not require an "active employment" of the weapon as described in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).[2]

■ ¶ 16 We are unpersuaded by Weisberg's argument that the "use of a weapon" instruction misstates the law. In *In re R.G.B.*, 597 P.2d 1333 (Utah 1979), the Utah Supreme Court addressed the sufficiency of the evidence to support a conviction for use of a weapon in the commission of a robbery. *See id.* at 1334. There, the defendant entered a store and demanded money, "while revealing a gun stuck into the front of his jeans." *Id.* The defendant argued that the State had not proven that he used a deadly weapon "since the [defendant] did not handle the gun or point it at the victim." *Id.* at 1335. The Utah Supreme Court disagreed, stating "it is not necessary that the State prove that the robber actually pointed a gun at the victim .... If merely exhibiting the

gun creates fear in the victim, it constitutes 'use of a firearm' for that purpose." *Id.* (footnote omitted).

¶ 17 Thus, according to *R.G.B.*, a weapon is used even if it is never actually pointed at a victim, so long as "exhibiting the [weapon] creates fear in the victim." *Id.* Because the instruction at issue in this case incorporated this principle, we conclude that it correctly stated the law in the context of this case.

¶ 18 In a variation on his first argument, Weisberg next claims that there was insufficient evidence presented at trial to warrant the second degree felony conviction because he did not actively employ or use a weapon in connection with the stalking offense. On these grounds, Weisberg filed a rule 23 motion to arrest judgment, which the trial court denied.[3]

¶ 19 In his rule 23 motion, Weisberg argued that his one-time conduct of moving the shotgun from the passenger compartment to the trunk of his car did not amount to use of a weapon for purposes of stalking. As already discussed, in *R.G.B.*, the Utah Supreme Court concluded that a defendant "uses" a dangerous weapon when he or she exhibits the weapon for the purpose of creating fear in the victim. *See R.G.B.*, 597 P.2d at 1335.

■ ¶ 20 In the instant case, the State presented sufficient evidence from which the jury could conclude that, over a period of two years, Weisberg followed Archibald, made threatening comments about her, and fre-

---

2. In *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Court held "that § 924(c)(1) require[d] evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." 516 U.S. at 143, 116 S.Ct. 501, 505, 133 L.Ed.2d 472. The Court concluded that " 'use' must connote more than mere possession of a firearm by a person." 516 U.S. at 143, 116 S.Ct. at 506.

   Weisberg's reliance on *Bailey* is misplaced, for that definition of "use" is specific to 18 U.S.C. § 924(c)(1). 516 U.S. at 143, 116 S.Ct. at 505. Furthermore, even if we were to apply *Bailey's* definition, the instruction Weisberg attacks is correct. *Bailey* states, "The word 'use' in the statute must be given its 'ordinary or natural' meaning, a meaning variously defined as 'to con-

vert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.' " 516 U.S. at 145, 116 S.Ct. at 506 (citations omitted). Here, the State presented sufficient evidence from which the jury could have found that Weisberg "employed" the shotgun in his stalking of Archibald.

3. Rule 23 provides that "[a]t any time prior to the imposition of a sentence the court ... may ... arrest judgment if the facts proved or admitted do not constitute a public offense ... or there is other good cause for the arrest of judgment." Utah R.Crim. P. 23. "The standard for determining whether a trial court correctly granted or denied a motion for arrest of judgment is the same standard appellate courts apply in determining whether a jury verdict should be set aside for insufficient evidence." *State v. Hoffhine*, 2001 UT 4, ¶ 20, 20 P.3d 265.

quented her business parking lot to frighten and intimidate her. The State also presented evidence that Weisberg entered the parking lot of Archibald's office and took deliberate steps to demonstrate that he was in possession and control of a shotgun. Weisberg parked his car directly behind Archibald's car, opened the passenger-side door, and moved a shotgun to the trunk of the car while directly in front of Archibald's office. Based on the evidence submitted, the jury could reasonably infer that Weisberg stalked Archibald and exhibited the shotgun for the purpose of creating fear in her.[4] Thus, the evidence presented was sufficient for the jury to convict Weisberg of stalking in the second degree, and we affirm the trial court's denial of Weisberg's motion to arrest judgment.

¶ 21 Finally, Weisberg argues that Utah Code Ann. § 76–5–106.5 (2000) is unconstitutional as applied to him under the United States and Utah Constitutions.[5] " '[W]hen reviewing statutes for constitutionality, a statute is presumed constitutional, and "we resolve any reasonable doubts in favor of constitutionality." ' " *Lopez,* 935 P.2d at 1262 (citations omitted) (alteration in original).

¶ 22 Weisberg argues that section 76–5–106.5 is unconstitutional as applied to him because it prohibits him from frequenting the shopping center where AATC is located and, thus, punishes him for merely being at a place where Archibald frequents. He also argues that the statute violates his free speech rights because he was prevented from picketing at AATC. We disagree.

¶ 23 Unlike a facial challenge, "a person ' "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." ' " *Lopez,* 935 P.2d at 1265 (citations omitted). Here, Weisberg had been told by the police on several occasions that he was to have no contact with Archibald, and he even signed a diversion agreement to this effect. Still, Weisberg made threatening statements about Archibald, entered the AATC parking with a pistol-grip shotgun, and engaged in other conduct intended to intimidate Archibald. Given Weisberg's knowledge and conduct, he cannot claim the statute is vague as applied to him. *See id.*

¶ 24 Moreover, Weisberg was not prosecuted for merely frequenting the AATC parking lot, picketing AATC, or for running into Archibald at several locations as he claims. Weisberg was prosecuted for "causing emotional distress to [Archibald] and engaging in behavior directed at her that could reasonably be understood as threatening." *Id.* at 1264–65. Thus, the claim that section 76–5–106.5 is either over-broad or vague as applied to Weisberg is without merit.

## CONCLUSION

¶ 25 The jury instruction addressing use of a weapon properly set forth the law. Moreover, the State presented sufficient evidence from which the jury could have convicted Weisberg for stalking in the second degree, and section 76–5–106.5 is constitutional. Accordingly, we affirm.

¶ 26 WE CONCUR: JAMES Z. DAVIS and PAMELA T. GREENWOOD, Judges.

---

4. Weisberg also argues that the evidence is insufficient to convict on second degree stalking because Archibald did not see him move the shotgun to the trunk of his car. Pursuant to *R.G.B.,* the State need only present evidence from which the jury can reasonably conclude that Weisberg intended to frighten Archibald by displaying the shotgun. *See In re R.G.B.,* 597 P.2d 1333, 1335 (Utah 1979). It is not necessary that the State prove that Archibald saw the shotgun, as long as a reasonable person in Archibald's position would have been frightened once she learned that Weisberg had been in her office parking lot with a shotgun. *See Salt Lake City v. Lopez,* 935 P.2d 1259, 1263–64 (Utah Ct.App.1997) (noting that element of offense of stalking is that reasonable person would have suffered emotional distress).

5. Weisberg also argues that section 76–5–106.5 is unconstitutional on its face. *See* § 76–5–106.5 (2000). This court found the statute facially sound in *Lopez,* 935 P.2d at 1264; thus, we address only Weisberg's claim that the statute is unconstitutional as applied to him.