2007 UT App 259

**J.J. ABERNATHY, Petitioner
and Appellee,**

v.

**John MZIK, Respondent and Appellant.**

No. 20051101–CA.

Court of Appeals of Utah.

July 27, 2007.

Reed R. Braithwaite, St. George, and Justin D. Heideman, Provo, for Appellant.

Virginius Dabney, St. George, for Appellee.

Before GREENWOOD, Associate P.J., McHUGH, and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 John Mzik appeals from the entry of a civil stalking injunction growing out of a dispute about his daughter's high school English grade. *See* Utah Code Ann. §§ 77–3a–101, 76–5–106.5(2) (2003). We affirm.

## BACKGROUND

¶ 2 In December 2004, J.J. Abernathy, an English teacher at Snow Canyon High School, confirmed that John Mzik's daughter was among several of her Advanced Placement English Literature and Composition students who had engaged in some form of academic dishonesty. As a direct result, Abernathy lowered Mzik's daughter's grade from an "A-" to an "Incomplete." On December 31, 2004, Mzik and his wife [1] engaged in a "heated" telephone discussion with Aber-

---

1. Both Mzik and his wife participated in the December 31, 2004 phone call, as well as the January 3, 2005 meeting. Principal Brent Fackrell testified that they were both hostile and accusatory at the meeting. Because Mzik is the only appellant, however, we hereafter refer solely to his actions and statements on those occasions.

nathy, where Mzik threatened to take legal action if the grade was not changed to an "A."

¶ 3 On January 3, 2005, Mzik arranged a meeting with Abernathy and Snow Canyon High School Principal Brent Fackrell to further discuss the grade (the first incident). At a later evidentiary hearing on the ex parte civil stalking injunction, Principal Fackrell described the three hour meeting as "accusatory" and "hostile," and stated that he had "never had [a situation with a parent] that even c[ame] close to this" in terms of continued hostile accusations toward a teacher. He also rated this particular meeting as an "eight" on a scale of one to ten, with one being "the most sensible and reasonable adversarial type meeting" and ten being "the most hostile and threatening." Principal Fackrell also testified that during the course of the meeting, "Mzik stood up and c[a]me over to [his] desk and tore some pages out of a book and started crumpling them up and threw them."

¶ 4 For reasons that are unclear from the record, Abernathy changed the daughter's "Incomplete" back to the original "A-" grade on January 4, 2005. Still not satisfied because any grade less than an "A" meant his daughter would not be class valedictorian, Mzik confronted Abernathy about a week later in the front office of Snow Canyon High School and attempted to hand-deliver a grievance letter to her (the second incident). Mzik had a small tape recorder with him and "thrust" it in Abernathy's face, asking her to state her name. Abernathy testified that she refused to accept his letter or speak into the tape recorder because Mzik had twice threatened legal action against her. At that point in the confrontation, Abernathy asked the school secretary to call the school police officer, Officer Hugie. Mzik continued to approach other school employees with the tape recorder, including a teacher, Principal Fackrell, and, eventually, Officer Hugie. After Mzik approached Officer Hugie, he was asked to leave the building. Mzik was later instructed not to return to the school.

¶ 5 On May 26, 2005, Snow Canyon High School held its annual graduation ceremonies, at which Mzik's daughter was to receive her diploma (the third incident). Because of the prior acrimony between the parties, Principal Fackrell, Abernathy, and District Superintendent Max Rose agreed that Abernathy should not sit on the podium with her colleagues, as was the usual practice. Abernathy was also given the option of not attending the graduation ceremonies at all. Because Abernathy had several students graduating, she decided to attend the ceremonies but chose to sit with her husband in the back of the arena, near an exit.

¶ 6 During the ceremonies, Mzik approached Abernathy and her husband at their seats. In a loud and intimidating manner, Mzik told Abernathy, "You are the most disgusting excuse for a teacher." Abernathy's husband then stood up and pushed Mzik, who responded by saying, "Hey, buddy, you want to go to jail? Hey buddy, you want to fight?" Abernathy was so upset by the provocation that she later sought medical attention at a local hospital, where she was diagnosed as having elevated blood pressure and emotional trauma.

¶ 7 On May 27, 2005, the day after the third incident, Abernathy filed a petition for a civil stalking injunction against Mzik, and the court issued an ex parte civil stalking injunction that same day. *See* Utah Code Ann. § 77–3a–101(5) (2003). After a hearing held about a month later, the parties agreed to the terms of an injunction, and an interim civil stalking injunction was issued on July 5. Mzik subsequently filed a motion to set aside the interim civil stalking injunction, and after a series of motions and hearings, the trial court scheduled an evidentiary hearing for October 4, 2005. Following the evidentiary hearing, at which the parties testified, the trial court entered a minute order stating, "[T]here is evidence to have a stalking injunction placed against [Mzik]."

¶ 8 In late October, the trial court entered findings of fact, conclusions of law, and an order for a civil stalking injunction against Mzik. In its conclusions of law, the trial court stated "[t]hat the actions and statements made by [Mzik] on January 3, 2005, January 10, 2005 and May 26, 2005 were threatening, intimidating and offensive to [Abernathy] and others, and were intended to and did

result in physical and emotional harm to [Abernathy]." Further, the trial court concluded that Mzik's "actions and statements ... on all three occasions were sufficient to meet the burden of proof for a Civil Stalking Injunction." [2] Mzik subsequently filed written objections to the findings of fact with the trial court and timely appealed the entry of the civil stalking injunction.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 9 Mzik, who does not challenge the trial court's factual findings on appeal, raises one viable legal issue for our consideration.[3] He contends that the trial court improperly interpreted the term "emotional distress" as used in Utah Code section 76–5–106.5(2), *id.* § 76–5–106.5(2), and therefore misapplied the civil stalking injunction statute, *see id.* § 77–3a–101. "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion." *Gutierrez v. Medley,* 972 P.2d 913, 914–15 (Utah 1998).

## ANALYSIS

¶ 10 Mzik argues that the trial court improperly interpreted the term "emotional distress"[4] in Utah Code section 76–5–106.5, Utah Code Ann. § 76–5–106.5(2)(a)(ii), (2)(c)(ii), and therefore misapplied the civil stalking injunction statute, *see id.* § 77–3a–101, when it found that Mzik had engaged in a course of conduct that "intended to and did result in ... emotional harm to [Abernathy]." More specifically, Mzik asserts that his conduct during the first incident and the second incident[5] did not rise to the level of "outrageous and intolerable" behavior necessary for a finding of emotional distress because it did not offend "the generally accepted standards of decency and morality." *Salt Lake City v. Lopez,* 935 P.2d 1259, 1264 (Utah Ct.App.1997) (defining the legal standard for emotional distress) (citation and internal quotation marks omitted). Therefore, Mzik reasons, the trial court erred in finding that his conduct caused the requisite "emotional distress" contemplated by section 76–5–106.5(2). For the reasons articulated below, Mzik's argument fails.

¶ 11 Utah Code section 77–3a–101 outlines the procedure by which a person may petition for an ex parte civil stalking injunction and incorporates by reference the definition found in the criminal stalking statute. *See* Utah Code Ann. § 77–3a–101(1). Section 76–5–106.5 of the criminal stalking statute provides in pertinent part as follows:

(2) A person is guilty of stalking who:

(a) intentionally or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person:

2. If the respondent files a request for a hearing within ten days of service of an ex parte civil stalking injunction, "[t]he burden is on the petitioner to show by a preponderance of the evidence that stalking of the petitioner by the respondent has occurred." Utah Code Ann. § 77–3a–101(6)(a), (7) (2003).

3. Mzik also argues that the civil stalking injunction is unconstitutional because it is overly broad and impedes his right to free speech. It does not appear that this issue was preserved. *See State v. Valdez,* 2006 UT App 290, ¶ 18, 141 P.3d 614 (stating that because a claim was not preserved at the trial level, appellate court would not review it on appeal). In any event, it was inadequately briefed. *Bernat v. Allphin,* 2005 UT 1, ¶ 38, 106 P.3d 707 (stating that because an issue was inadequately briefed, appellate court would not review it on appeal), *cert. denied,* 545 U.S. 1104, 125 S.Ct. 2550, 162 L.Ed.2d 276 (2005). Accordingly, we do not reach the merits of this issue.

4. Mzik further asserts that public employees should be held to a higher standard of emotional distress given the public and often contentious nature of their employment. In total, Mzik spends two sentences developing this argument, with no citations to supporting legal authority. Accordingly, this argument is inadequately briefed, and we do not address it other than to observe that, unlike with police officers and politicians, the duties of advanced placement English teachers are not inherently so controversial as to reasonably entail anything like the behavior Abernathy was subjected to by Mzik.

5. Mzik does not challenge the trial court's determination that the third incident was sufficiently egregious to constitute one qualifying incident in the "course of conduct" necessary to satisfy the civil stalking injunction statute.

(i) to fear bodily injury to himself or a member of his immediate family; or

(ii) to suffer emotional distress to himself or a member of his immediate family.

*Id.* § 76–5–106.5(2)(a)(i)–(ii). This definition of "course of conduct" includes *"repeatedly* conveying verbal or written threats or threats implied by conduct ... directed at or toward a person." *Id.* § 76–5–106.5(1)(a) (emphasis added). And "repeatedly" is defined as "two or more occasions." *Id.* § 76–5–106.5(1)(c). Furthermore, we have previously recognized that subsection 2(a) incorporates a reasonable person standard in the stalking definition. *See Ellison v. Stam,* 2006 UT App 150, ¶ 27, 136 P.3d 1242. Accordingly, a person is guilty of stalking as defined in section 76–5–106.5(2)(a)(i)–(ii), if, on two or more occasions, he intentionally engages in conduct that causes a reasonable person to (1) fear bodily injury *or* (2) suffer emotional distress. *See* Utah Code Ann. § 76–5–106.5(1)–(2).

¶ 12 In his brief, Mzik focuses exclusively on the "emotional distress" language of section 76–5–106.5, *id.* § 76–5–106.5(2), arguing that the trial court's findings simply do not bear out that his conduct during the first incident and the second incident "offend[ed] ... generally accepted standards of decency and morality," *Lopez,* 935 P.2d at 1264, thereby satisfying the emotional distress element of the statute. Mzik's argument is unavailing, however, because section 76–5–106.5(2) does not require that he cause both fear of bodily injury and emotional distress-only one or the other is required. *See* Utah Code Ann. § 76–5–106.5(2)(a)(i)–(ii), (c). Accordingly, while we are far from persuaded by Mzik's argument that his conduct did not reasonably cause Abernathy emotional distress, we can nonetheless affirm the trial court simply because Mzik's conduct did cause Abernathy to reasonably fear bodily injury. *See id.* § 76–5–106.5(2)(a)(i), (c)(i).

¶ 13 In this case, the trial court found that on at least the last two occasions, Mzik's conduct placed Abernathy in reasonable fear of bodily injury. Specifically, the trial court found that the second incident, when Mzik "thrust [a] tape recorder in [Abernathy's] face" and caused her to "fe[el] that her privacy and work environment had been 'invaded,'" were acts sufficient to cause Abernathy to reasonably fear bodily injury. The trial court also found that the third incident, where Mzik verbally attacked Abernathy and then threatened her husband, also caused Abernathy to reasonably fear bodily injury. Again, these findings are not challenged on appeal. We therefore conclude that the trial court did not err when it determined that Mzik's actions on these two occasions were "sufficient to meet the burden of proof for a Civil Stalking Injunction for the reason that each constituted prohibited conduct found in the Utah Civil Stalking Injunction Statute."

¶ 14 Finally, we note that from the first incident to the third incident, Mzik's conduct appeared to be escalating in both hostility and aggressiveness. This is important because in cases involving civil stalking injunctions, we look at the totality of the circumstances in evaluating whether or not certain behavior caused the requisite emotional distress or fear of bodily injury. *See Ellison v. Stam,* 2006 UT App 150, ¶ 27, 136 P.3d 1242 ("[A]ny evaluation of a defendant's conduct must be considered in the context of all of the facts and circumstances existing in the case."). In light of all the circumstances of this case, including Mzik's increasingly aggressive behavior, we conclude that the trial court did not err when it found that Mzik had engaged in conduct sufficient to satisfy Utah Code section 76–5–106.5(2). *See* Utah Code Ann. § 76–5–106.5(2)(a), (c).

## CONCLUSION

¶ 15 Whatever may be said of the emotional distress alternative in this case, it is enough that the trial court found that Mzik, on at least two occasions, engaged in conduct that reasonably caused Abernathy to fear bodily injury to herself or a member of her family. *See id.* § 76–5–106.5(2)(a)(i), (2)(c)(i). Accordingly, we affirm.

¶ 16 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, CAROLYN B. McHUGH, Judge.