# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMSC-003

Filing Date: October 18, 2021

No. S-1-SC-37990

STATE OF NEW MEXICO,

      Plaintiff-Respondent,

v.

ZACHARIAH G.,

      Child-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Fred Van Soelen, District Judge

Released for Publication January 18, 2022.

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Meryl Elizabeth Francolini, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**VIGIL, Chief Justice.**

**{1}** When Zachariah G. (Child) was twelve years old, he brought a BB gun to school.[1] Although Child did not shoot, point, or brandish the gun, a jury found that he committed the delinquent act of aggravated assault with a deadly weapon on a school employee pursuant to NMSA 1978, § 30-3-9(C)(1) (1989). That delinquent act, along

---

[1] Child brought an air-powered gun to school, either a BB gun or an airsoft gun. In this opinion we follow the Court of Appeals by referring to the weapon as a BB gun. *See, e.g.*, *State v. Zachariah G.*, 2021-NMCA-036, ¶¶ 2, 10, ___ P.3d ___. (A-1-CA-37584, Oct. 1, 2019).

with his delinquent act of unlawfully carrying a deadly weapon on school premises pursuant to NMSA 1978, § 30-7-2.1 (1994), led to his adjudication as a delinquent child.

**{2}** Child contends that the jury finding that he committed aggravated assault must be reversed because there was not substantial evidence that he "used" the deadly weapon. Relatedly, Child argues that this Court should alter the standard for "use" of a deadly weapon to commit assault that was applied by the Court of Appeals. Child argues that "use" of a deadly weapon in an assault requires "actual use" or "weapons-related conduct."

**{3}** We agree with Child that the principles governing *use* of a deadly weapon should be refined but decline to adopt Child's suggested standard. Instead, we hold that a defendant *uses* a deadly weapon to commit assault where a defendant makes *facilitative use* of the deadly weapon. *Facilitative use* of a deadly weapon may be found if (1) a deadly weapon is present at some point during the encounter, (2) the victim knows or, based on the defendant's words or actions, has reason to know that the defendant has a deadly weapon, and (3) the presence of the weapon is intentionally used by the defendant to facilitate the commission of the assault. In this case, a reasonable jury could have determined Child *used* the BB gun when his verbal threats together with the presence of the BB gun created the victim's fear of receiving an immediate battery. Accordingly, we affirm.

## I.      BACKGROUND

**{4}** At Marshall Middle School in Clovis, New Mexico, Principal Morris learned that Child—then twelve years old—had a weapon on campus. Morris located Child in a hallway and escorted Child back to Morris's office. On the way, Morris noticed that Child was "fumbling in the front area of his waistband."

**{5}** In the office, Morris directed Child to empty his pockets. Child had a $CO_2$ cartridge, among other items, which Morris recognized as an accessory for a BB gun or an airsoft pistol. Morris noticed an abnormal bulge in Child's waistband. Morris asked Child what was causing the bulge and to hand over the item. Child refused  and said it was his "dick."

**{6}** Feeling insecure, Morris asked his secretary to call the police. While waiting for the police to arrive, Child asked Morris three questions: "What would happen if somebody shot up the school?"; "Are you afraid to die?"; and "How would you feel if a twelve-year-old shot you?" The questions and circumstances made Morris insecure and unnerved. A subsequent police search of Child revealed that a BB gun which resembled a firearm was the object creating the bulge in Child's waistband.

**{7}** Child was adjudicated as delinquent in the district court. The Court of Appeals affirmed that adjudication, with Judge Vargas specially concurring and Judge Ives dissenting. *State v. Zachariah G.*, 2021-NMCA-036, ¶¶ 1, 23, 24-39, ___ P.3d ___ (A-1-CA-37584, Oct. 1, 2019). The Court of Appeals concluded, in relevant part, that there was substantial evidence to affirm Child's delinquent act of aggravated assault with a

deadly weapon because Child "used" the BB gun in the assault. *Id.*¶ 15. Child petitioned this Court for a writ of certiorari, requesting that we review the definition of *use* applied by the Court of Appeals. Child also petitioned for review of the Court of Appeals conclusion that there was substantial evidence that Child committed aggravated assault on Morris "[i]n light of the fact that [Child] did not reference, gesture towards, brandish, aim or reveal" the BB gun. To address these two issues, we granted certiorari.

## II.     DISCUSSION

### A.     Standard of Review

**{8}**     Child's challenge to the definition of the term *use* applied by the Court of Appeals raises an issue of statutory construction that we review de novo. *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868. When interpreting statutory language, "[o]ur primary goal is to ascertain and give effect to the intent of the Legislature." *Id.* "In doing so, we examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *Id.* (internal quotation marks and citation omitted).

**{9}**     Child's sufficiency of the evidence challenge requires that we review "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Baroz*, 2017-NMSC-030, ¶ 9, 404 P.3d 769 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Baca*, 2019-NMSC-014, ¶ 17, 448 P.3d 576 (internal quotation marks and citation omitted). "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted).

### B.     *Use* of a Deadly Weapon in the Context of Assault With a Deadly Weapon

**{10}**     Child challenges whether the Court of Appeals properly construed the jury instruction for Section 30-3-9(C)(1), which defines aggravated assault with a deadly weapon on a school officer as "unlawfully assaulting or striking at a school employee *with* a deadly weapon while he is in the lawful discharge of his duties." (Emphasis added.) The related uniform jury instruction is UJI 14-355 NMRA. UJI 14-355 interprets the Section 30-3-9(C)(1) requirement that the assault was committed *with* a deadly weapon by requiring that a deadly weapon was *used* to commit the assault. The relevant jury instruction in this case was based on UJI 14-355 and, like UJI 14-355, required that a deadly weapon was *used*. Child does not challenge whether *used* is an appropriate proxy for *with* but, instead, contends that the Court of Appeals did not appropriately define *used*.

**{11}**     The Court of Appeals concluded that in the context of aggravated assault with a deadly weapon, "[u]se means, among other things, to carry out a purpose or action by

means of, to make instrumental to an end or process, and to apply to advantage." *Zachariah G.*, 2021-NMCA-036, ¶ 14 (internal quotation marks omitted) (quoting *State v. Trujillo*, 1978-NMCA-041, ¶ 12, 91 N.M. 641, 578 P.2d 342). This standard was intended to be sufficiently broad to effectuate the purpose of aggravated assault statutes "to deter the use of deadly weapons" but not so broad "as to encompass non-use or mere possession of a deadly weapon." *Zachariah G.*, 2021-NMCA-036, ¶ 14. The special concurrence and dissent both agreed that a more "precise" definition of "use" than that crafted by the majority opinion would be beneficial in the context of assault with a deadly weapon. *See id.* ¶ 23 (Vargas, J., specially concurring); *id.* ¶ 25 (Ives, J., dissenting). Toward that end, the dissent suggested refinements to the majority's definition of "use." *Id.* ¶¶ 26-31 (Ives, J. dissenting).

**{12}** Drawing on a line of California cases already incorporated into New Mexico law, the dissent suggested a "litmus test" to determine whether a gun is "used" in the commission of a felony. *Id.* ¶ 30 (Ives, J., dissenting). That proposed test "is whether the defendant took some *action* with the gun *in furtherance of the commission* of the crime." *Id.* (Ives, J., dissenting) (brackets, internal quotation marks, and citation omitted). Under this test, "use" requires a "facilitative, gun-related act." *Id.* (Ives, J., dissenting) (internal quotation marks and citation omitted). Thus, to the dissent, when a "defendant's *conduct* with respect to the weapon appears to be purely incidental to the crime," a defendant has not "used" the weapon *Id.* (Ives, J., dissenting) (internal quotation marks and citation omitted). However, a jury may "find a facilitative use rather than an incidental or inadvertent exposure if a defendant deliberately shows a gun, or otherwise makes its presence known," or "if there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense." *Id.* ¶ 30 & n.4 (Ives, J., dissenting) (brackets, internal quotation marks, and citation omitted). Although these concepts of *use* were discussed in the context of firearm sentencing enhancement, *id.* ¶ 30 (Ives, J., dissenting), the dissent would also apply them to the "use" of a deadly weapon. *Id.* ¶ 31 (Ives, J., dissenting) (stating that adding these concepts would benefit the analysis of Child's case, as well as our courts, the bar, and the public).

**{13}** In this Court, Child advocates for the formulation of *use* suggested by the Court of Appeals dissent and also proposes a related jury instruction. In relevant part, Child's proposed jury instruction states that:

> For the defendant to have "used" a deadly weapon, the defendant must have taken some action with the deadly weapon in furtherance of the commission of the crime.

> If the defendant did not take an affirmative action with the deadly weapon, or such conduct was incidental and unrelated to the offense, no "use" occurred.

Child's formulation requires an "affirmative action" with the deadly weapon. Under Child's proposed formulation, words and passive display of a deadly weapon, without more, could not be a *use* of a deadly weapon.

**{14}** The State defends the view of the Court of Appeals majority and argues that it is unnecessary for this Court to refine the definition of *use* of a deadly weapon in the context of assault with a deadly weapon. The State essentially argues that where a defendant leverages a victim's awareness of a readily accessible firearm with verbal threats, a defendant has *used* the firearm. The State argues against Child's proposed jury instruction on the ground that it is unnecessary because the required "action" with a deadly weapon contemplated by Child's proposed instruction can be words.

**{15}** It is against this backdrop that we examine what it means to *use* a deadly weapon in an aggravated assault. In numerous assault statutes, the Legislature has chosen to increase the penalty when the assault is committed *with*, or put another way, *using*, a deadly weapon. *Compare, e.g.*, NMSA 1978, § 30-3-1 (1963) (providing that assault is a petty misdemeanor), *with* NMSA 1978, § 30-3-2 (1963) (providing that assault committed with a deadly weapon is a fourth-degree felony); *Compare* § 30-3-9(B) (providing that "assault upon a school employee" is a misdemeanor), *with* § 30-3-9(C) (providing that assault on a school employee committed with a deadly weapon is a third-degree felony); *Compare* NMSA 1978, § 30-3-12(B) (1995) (providing that assault against a household member is a petty misdemeanor), *with* NMSA 1978, § 30-3-13(B) (1995) (providing that assault against a household member committed with a deadly weapon is a fourth-degree felony). The apparent purpose of these statutes is to deter the use of deadly weapons in aggression against others, *State v. Sosa*, 1997-NMSC-032, ¶ 38, 123 N.M. 564, 943 P.2d 1017, *abrogated on other grounds by State v. Porter*, 2020-NMSC-020, 476 P.3d 1201, and in furtherance of that purpose, "use" should be construed broadly, *Trujillo*, 1978-NMCA-041, ¶ 14. In this, we are in accord with the Court of Appeals. *See Zachariah G.*, 2021-NMCA-036, ¶¶ 12, 14.

**{16}** We also agree with the Court of Appeals—the majority, the special concurrence, and the dissent—that California law is instructive. *See id.* ¶¶ 11, 14, 23, 30. We affirm the California law principles construing *use* of a deadly weapon that have already been incorporated into New Mexico law and that were relied upon by the Court of Appeals majority in this case. Namely, that to *use* a deadly weapon in an assault means to carry out the assault by means of the deadly weapon, to make the deadly weapon instrumental to the assault, and to apply the deadly weapon to advantage in the assault. *See id.* ¶ 14.

**{17}** But, as the Court of Appeals dissent pointed out, California has further developed these principles. *Id*. ¶ 30 (Ives, J., dissenting). *People v. Granado* construed *use* under California law, as that term was applied when the prosecution sought to enhance a defendant's sentence based on the presence of a firearm during the commission of a crime. 56 Cal. Rptr. 2d 636, 638 (1996). *Granado* emphasized that there must be a connection—a nexus—between the firearm and the underlying crime in order for a jury to find that a defendant's sentence should be enhanced because the defendant "used" the firearm. *Id.* at 641-42. The *Granado* Court referred to this as a "facilitative use":

> [W]hen a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the

underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure.

*Id.* at 641.

**{18}** These refinements are important. We conclude that the emphasis on the nexus between the firearm and the underlying crime is particularly useful in the context of assault with a deadly weapon. Assault with a deadly weapon—more specifically, assault with a deadly weapon by threat—can present unusual issues. Assault by threat includes "any unlawful . . . threat . . . which causes another person to *reasonably believe that he is in danger of receiving an immediate battery.*" Section 30-3-1(B) (emphasis added). Thus, our Legislature has chosen to criminalize the creation of apprehension or fear. In our view, the definitional principles articulated by the Court of Appeals majority do not sufficiently account for verbal threats that leverage the presence of a deadly weapon resulting in the required state of mind. In such situations, an analysis focused on facilitative use will help distinguish between mere possession of a deadly weapon and situations where the deadly weapon was, in fact, "appl[ied] to advantage" in furtherance of an assault. *Trujillo*, 1978-NMCA-041, ¶ 11 (internal quotation marks and citation omitted).

**{19}** Accordingly, we supplement the principles of *use* applied by the Court of Appeals majority with the following definition. A *facilitative use* of a deadly weapon during an assault—as distinct from incidental exposure or mere possession—may be found where (1) a deadly weapon is present at some point during the encounter, (2) the victim knows or, based on the defendant's words or actions, has reason to know that the defendant has a deadly weapon, and (3) the presence of the weapon is intentionally used to facilitate the commission of the assault. *Facilitative use* of a deadly weapon in the course of an assault indicates that a defendant has committed assault "with" a deadly weapon. *See, e.g.*, § 30-3-9(C)(1) (defining aggravated assault on a school employee as "unlawfully assaulting or striking at a school employee *with* a deadly weapon while he is in the lawful discharge of his duties" (emphasis added)).

**{20}** Although we have accepted Child's invitation to refine the definition of *use*, we are unpersuaded by his invitation to require an "affirmative action with the deadly weapon" as a requirement for a finding that the deadly weapon was *used*. That requirement would fail to capture the ways a verbal threat might leverage the presence of a deadly weapon to create a reasonable fear of receiving an immediate battery. We offer the following hypothetical to explain. Where a defendant has a gun in his or her waistband, clearly visible but untouched, and announces that he or she has a gun and then threatens to shoot the victim, surely a jury could find that the defendant *used* the gun to create the reasonable apprehension of an immediate battery. Yet, it seems to us that Child's formulation—requiring an "affirmative action with the deadly weapon"— would rule out a finding of *use* under these circumstances. This seems to us incorrect on its face and contrary to the Legislature's intent that *use* be construed broadly to deter the use of deadly weapons in aggression against others. *See Sosa*, 1997-NMSC-032, ¶ 38; *Trujillo*, 1978-NMCA-041, ¶ 14. In related contexts, other state courts have also resisted such a cramped definition of *use* and have instead emphasized the connection

between the presence of the deadly weapon and the facilitation of the underlying offense. *See, e.g., Sheely v. State*, 650 S.E.2d 762, 764 (Ga. Ct. App. 2007) ("[T]he element of 'use' is present when the victim is aware of the weapon and [the weapon] has the desired forceful effect of assisting to accomplish the robbery." (internal quotation marks and citation omitted)); *State v. Weisberg*, 2002 UT App 434, ¶¶ 15-17, 62 P.3d 457 (rejecting an argument that "active employment" of a dangerous weapon was required for a finding that the dangerous weapon was "used" because, under Utah law, "[i]f merely exhibiting the [dangerous weapon] creates fear in the victim, it constitutes 'use of a [dangerous weapon]' for that purpose" (internal quotation marks and citations omitted)); *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Ct. Crim. App. 1989) (en banc) (holding "that 'used . . . during the commission of a felony offense' . . . extends . . . to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony" (first omission in original) (citation omitted)).

**{21}**     For the foregoing reasons, we decline to adopt Child's proposed jury instruction. Instead, we refer this matter to our Criminal Uniform Jury Instructions Committee for consideration, and we request that the Committee offer recommendations to the Court consistent with our refined definition of *use* of a deadly weapon in the context of assault.

## C.     Sufficiency of the Evidence for the Assault on a School Employee With a Deadly Weapon

**{22}**     Child challenges the sufficiency of the evidence supporting his adjudication of aggravated assault with a deadly weapon on a school employee. The jury instructions, which became the law of the case against which the sufficiency of the evidence must be tested, *see State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409, required that the jury find beyond a reasonable doubt that:

1.     The Child . . . threatened to shoot Todd Morris;

2.     The Child's conduct caused Todd Morris to believe that the Child was about to intrude on Mr. Morris' bodily integrity or personal safety by touching or applying force to Mr. Morris in a rude, insolent or angry manner;

3.     At the time, Todd Morris was a middle school Principal and was performing duties of a middle school Principal;

4.     The Child knew Todd Morris was a middle school Principal;

5.     A reasonable person in the same circumstances as Todd Morris would have had the same belief;

6.     The Child used a deadly weapon. The Child used a[ BB gun]. A[ BB gun] is a deadly weapon only if you find that a[ BB gun], when used as a weapon, could cause death or great bodily harm;

7.      This happened in New Mexico on or about the 8th of February, 2018.

Child only challenges whether there was sufficient evidence to satisfy the essential element that he *used* a deadly weapon. We therefore examine whether the evidence supports a finding that Child made a facilitative use of a deadly weapon.

**{23}**   First, a deadly weapon was present. Child does not contest whether the BB gun—which is not listed as a per se deadly weapon under NMSA 1978, § 30-1-12(B) (1963)—satisfies the *Nick R.* requirements for finding that an unlisted object is a "deadly weapon" under the facts of a particular case. *See Nick R.*, 2009-NMSC-050, ¶¶ 37-38 (requiring that an unlisted object qualifies as a "deadly weapon" only if the jury finds, inter alia, that the "object was *actually used as a weapon* and that it was capable of causing the wounds described in the statute" (emphasis added) (internal quotation marks omitted)). We do not disturb *Nick. R.* with this opinion, including the *Nick R.* threshold inquiry into whether an unlisted object qualifies as a "deadly weapon" under the facts of a particular case.

**{24}**   Second, the evidence also supports a finding that Morris knew or had reason to know from Child's words and actions that Child had a BB gun when Child threatened him. Child revealed a $CO_2$ cartridge when he emptied his pockets and Morris recognized the $CO_2$ cartridge as a component of a BB gun. Moreover, Morris had reason to know that Child had a gun from the substance of Child's threats. In particular, Child asking how Morris would feel if he were "shot" by a twelve-year-old and Child wondering what would happen if the school were "shot up" by someone gave Morris reason to know that Child had a gun. Indulging all reasonable inferences in the light most favorable to the verdict, as we must, *Largo*, 2012-NMSC-015, ¶ 30, we conclude that the combination of Child's words and actions reasonably caused Morris to know or have reason to know that Child had a deadly weapon.

**{25}**   The third *facilitative use* factor requires that we examine whether the evidence supports a finding that the presence of the weapon was intentionally used by Child to facilitate the commission of an assault upon Morris. The assault in this case was Child's threat that caused Morris to reasonably believe that he was in danger of receiving an immediate battery. In our view, the evidence also supports a finding that Child intentionally used the presence of the BB gun to facilitate this assault when Child asked Morris how he would feel if he were shot, what would happen if someone shot up the school, and if Morris was afraid to die.

**{26}**   Child disagrees, arguing that no rational jury could have concluded that he "used" a deadly weapon because he did not engage in any "weapon-related conduct," or, put another way, did not "actually use" the BB gun. As discussed above, Child suggests too high a bar for *use* of a deadly weapon in an assault. We have already rejected Child's proposed legal standard, and accordingly we are unpersuaded by this argument.

**{27}**   This case underscores that the focus of whether a deadly weapon was *used* in an assault should be on the nexus between the deadly weapon and the assault. Based

on Child's verbal threats that took advantage of the presence of the BB gun, it was reasonable for the jury to determine that Child's conduct caused Morris "to reasonably believe that he [was] in danger of receiving an immediate battery," *see* § 30-3-9(B)(2), and thus, Child *used* the deadly weapon to facilitate the assault.

## III.    CONCLUSION

{28}    For the stated reasons, we affirm Child's adjudication of delinquency. In addition, we hold that a person commits assault with a deadly weapon when a person makes *facilitative use* of the deadly weapon to commit the assault. A *facilitative use* may be found where (1) a deadly weapon is present at some point during the encounter, (2) the victim knows or, based on the defendant's words or actions, has reason to know that the defendant has a deadly weapon, and (3) the presence of the weapon is intentionally used to facilitate the commission of the assault. We refer this matter to the Criminal Uniform Jury Instructions Committee for consideration, and we request that the Committee offer recommendations to the Court consistent with this opinion.

{29}    IT IS SO ORDERED.

**MICHAEL E. VIGIL, Chief Justice**

**WE CONCUR:**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**JUDITH K. NAKAMURA, Justice, retired**
**Sitting by designation**