IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2025-NMCA-023

Filing Date: November 18, 2024

No. A-1-CA-41465

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

MATTHEW RODGERS,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WRAY, Judge.**

**{1}** Defendant was charged with aggravated burglary (armed after entering), *see* NMSA 1978, § 30-16-4(B) (1963), and criminal damage to property, *see* NMSA 1978, § 30-15-1 (1963). Under the Mental Illness and Competency Code (the Code), NMSA 1978, §§ 31-9-1 to -2 (1967, as amended through 2023), the district court (1) determined Defendant to be incompetent, *see* § 31-9-1.1, and dangerous; and (2) committed Defendant for treatment to attain competency, *see* § 31-9.1.2(B). The parties subsequently agreed that there was no substantial likelihood that Defendant could become competent within the statutory time frame. *See* § 31-9-1.3(E). After a hearing,

the district court found by clear and convincing evidence under Section 31-9-1.5(D) that Defendant committed a felony, contrary to Section 30-16-4(B), which involved the use of a firearm. The district court further found that Defendant remained both incompetent and dangerous and therefore ordered Defendant to be committed to a behavioral health facility for up to nine years, subject to periodic review of his mental health status. *See* § 31-9-1.5(D)(1), (2) (requiring, after necessary findings are made, commitment to a secure, locked facility until the district court enters an order or the "expiration of the period of time equal to the maximum sentence to which the defendant would have been subject had the defendant been convicted in a criminal proceeding"); § 30-16-4 (defining aggravated burglary as a second degree felony); NMSA 1978, § 31-18-15(A) (2019, amended 2024) (authorizing a nine-year sentence for second degree felonies). On appeal, Defendant argues that the crime of aggravated burglary (armed after entering) is not a felony that "involves the use of a firearm," *see* § 31-9-1.5(D), and the State did not prove that he committed that crime. As a result, Defendant "asks this Court to reverse and remand for his charges to be dismissed." We hold that under Section 31-9-1.5(D), whether a felony charge "involves the use of a firearm" is defined by the totality of the circumstances. Further, we, like the district court, conclude that at the commitment hearing, the State "barely" met its burden to prove by clear and convincing evidence that Defendant committed the charged felony. *See* § 31-9-1.5(A), (B) (establishing the State's burden to prove the sufficiency of the evidence, by "clear and convincing evidence[,] that the defendant committed" a felony that meets the conditions for criminal commitment). Accordingly, we affirm.

## BACKGROUND

**{2}** For the purposes of explaining the circumstances faced by the district court at the commitment hearing, our factual background[1] begins with the original allegations against Defendant, continues with the evidence developed and findings made at the subsequent hearings, and culminates with the commitment hearing and the district court's determination that the State met its burden.[2]

**{3}** According to the statement of probable cause, law enforcement received a suspicious person report just after midnight on April 26, 2022. The caller reported that an individual in a gray hoodie, armed with a knife, was trying to get into the front door of

---

[1]Throughout the proceedings, some confusion has clouded the dates associated with the events at issue on appeal. In some instances, the State referenced the relevant overnight period to include April 23 and 24, 2022, and in others, the State identified the same overnight period to include April 25 and 26, 2022. The statement of probable cause and criminal complaint refer to April 26, 2022 and April 29, 2022. Because this inconsistency relates to an issue raised by Defendant on appeal, in our narrative we highlight the dates referenced by the State in relevant testimony.

[2]In doing so, we do not suggest that unproven statements in criminal complaints and statements of probable cause may be relied on to satisfy the State's proof obligations under the Code. *See State v. Archuleta*, 2023-NMCA-077, ¶¶ 1, 20, 536 P.3d 528 (holding that the rules of evidence apply in dangerousness hearings and affirming the exclusion of "criminal complaints to establish dangerousness" based on the rule against hearsay); *see also State v. Holbert*, 2024-NMCA-069, ¶ 12, 556 P.3d 603 (observing that "[c]harges that have not been proved or that require further investigation generally have no tendency to show that the alleged facts happened . . . and the allegations supporting those charges remain unsubstantiated").

the caller's home by manipulating the handle of the screen door. Officer Felix responded to the property and saw the individual, who fled before Officer Felix could make contact. The caller provided law enforcement with surveillance camera video. Shortly after the first call, another person called dispatch and described an individual who was on her property, which was near the place where Officer Felix had lost sight of the person from the first call, and who was manipulating a firearm. The second caller also provided surveillance video footage. Yet another caller also reported a person "walking around with a handgun wearing a gray hoodie." Officer McPherson responded to the third call and contacted an individual who was identified as Defendant. Defendant was cooperative, and law enforcement took him into custody. A handgun was found "right where [Defendant] was first spotted" by Officer McPherson.

**{4}** According to the statement of probable cause, another officer investigated a firearm stolen from a vehicle on the same morning. An individual reported that he had a firearm in the center console of his vehicle when he returned home from work the evening before, but the following morning, "the center console was up and opened," and a knife was on the vehicle's driver's seat. The statement of probable cause included a detailed description of the firearm. The burglary victim identified the firearm that was found near where Defendant was arrested as the firearm that had been in the vehicle.

**{5}** Defendant was charged by criminal complaint for one count of aggravated burglary (armed after entering), relating to taking the firearm from the vehicle, and one count of criminal damage to property, relating to a broken glove box in a different vehicle. At the pretrial detention hearing, Defendant's father testified about Defendant's mental health struggles, refusal to remain medicated, and unpredictable behaviors. Defendant's father also testified about his knowledge of "the events of April 23rd going into the 24th." Another officer also testified about his interaction with Defendant after the arrest. After granting the State's motion for pretrial detention, the district court ordered a competency evaluation.

**{6}** On receipt of the report from the competency evaluation, the State stipulated that Defendant was not competent to stand trial and requested a hearing to determine whether Defendant was dangerous "as defined by Sec[tion] 31-9-1.2." *See* § 31-9-1.2(B) ("When a district court determines that a defendant charged with a felony is incompetent to proceed in the criminal case, but does not dismiss the criminal case, and the district court at that time makes a specific finding that the defendant is dangerous, the district court may commit the defendant as provided in this section for treatment to attain competency to proceed in a criminal case."). The district court entered an order finding that Defendant was not competent to stand trial and set a hearing to determine dangerousness.

**{7}** The State presented the following evidence at the dangerousness hearing. Officer Felix testified that he was on duty on April 23, 2022 and described responding to the first two calls for service. Apart from the date of the incident, his testimony was similar to the events recounted in his statement of probable cause. Sergeant Mosley, who was part of the law enforcement team that ultimately took Defendant into custody

and recovered the firearm, testified that on April 23, 2022, he initially saw Defendant with the handgun in his right hand and thought Defendant was attempting to place the handgun in either his waistband or hoodie. But after calling out to Defendant and detaining him, Sergeant Mosely found the handgun on the ground not far from where Defendant had previously been standing. A behavioral health nurse also testified about Defendant's behavior as a patient, which included violent outbursts and threats. At the close of the hearing, the district court recognized the parties' stipulation that Defendant was not competent to proceed and found Defendant to be dangerous "at this point in time," based on "the escalating nature" of Defendant's behavior, which the district court noted was apparent during the hearing. The district court ordered Defendant to be committed to the New Mexico Behavioral Health Institute (NMBHI) for "treatment to competency." *See* § 31-9-1.2(B).

**{8}** Thereafter, the parties agreed that there was not a "substantial probability" that Defendant would achieve competency within nine months, as required by the Code, and returned to the district court to move forward. *See* § 31-9-1.4 (providing for three possible outcomes when the district court determines "that there is not a substantial probability that the defendant will become competent . . . within a reasonable period of time not to exceed nine months" from the original incompetency finding). The State requested a criminal commitment hearing pursuant to Section 31-9-1.5, in order to prove by clear and convincing evidence that Defendant committed aggravated burglary and that the felony involved the use of a firearm. *See* § 31-9-1.5(D). Defendant argued that the aggravated burglary (armed after entering) charge did not meet the criteria for a commitment hearing under Section 31-9-1.5 because the State did not allege that Defendant "used the firearm in any way at any time during the alleged burglary." Defendant did not dispute that he *was* armed—just whether arming himself after entering the vehicle constituted "use of a firearm" for Section 31-9-1.5 purposes. Because Defendant was charged with no other felony that justified criminal commitment, Defendant sought dismissal of the charges. *See* § 31-9-1.4(B), (C) (permitting alternative outcomes to commitment, including dismissal, if the charges do not satisfy the requirements of Section 31-9-1.5(A)). The district court permitted the criminal commitment hearing to proceed.

**{9}** At the criminal commitment hearing, the State presented evidence through several witnesses to establish that Defendant committed a felony that involved the use of a firearm. *See* § 31-9.1.5(A), (D). It was from this evidence that the district court made the ultimate determination regarding Defendant's commitment and it is this decision that is before us on appeal. One 911 caller testified about first reading online about a person with a gun in the neighborhood and then about seeing a person in a gray hoodie with a gun in his hand on her doorstep in the early morning hours of April 26, 2022. The person then moved to the neighbor's house next door, "talking to himself and waiving a gun around." A second witness also testified about seeing a person with a gun on her property in the early morning hours of April 26, 2022. This witness described the person's actions with the gun: "You could very clearly tell this person was holding a gun and looking at it and turning it over in their hand like they were trying to figure out what it—how to use it—what it was." The person holding the gun walked

around the property, up and down the driveway, for five or ten minutes. The second witness was not too worried about the presence of the person on the property until it became clear on the camera that the person was holding a gun. This witness called 911 because the person with the firearm "was really examining it, like he could do something with it." The person was pointing the gun away from himself, apparently not at a specific target, and "he was really checking it out is more of the impression I got—just the way that he was holding it could have easily gone either way, which is what caused me to call 911." The burglary victim also testified and described the firearm that—on April 23, 2022—was kept in his vehicle. The witness testified that when he woke up, he discovered that the car had "been entered and the firearm was missing," along with "a pistol magazine that accompanied the firearm." The district court asked the witness whether he ever got the firearm back, and the witness said that he had and explained, "I believe the police had found it near him and they returned it to me the following day." Sergeant Mosley again testified about the circumstances that led to apprehending Defendant on April 26, 2022 and recovering the firearm nearby. Sergeant Mosley testified that he was the day shift sergeant on the morning of April 26, 2022, and during a morning briefing he "learned from the nighttime shift—the graveyard shift—that they had been dealing with an armed subject in the country club neighborhood throughout the—throughout the nighttime." Sergeant Mosley could not, however, testify about the make or model of the weapon.

{10}    In closing, the State argued that a weapon was stolen from a vehicle earlier and then Defendant erratically wandered through neighborhoods with a firearm. To the Section 31-9-1.5(D) point that Defendant had made before the hearing, the State maintained that Defendant's actions involved the use of a firearm. Defendant responded that while the State had established that a firearm was stolen from a vehicle by someone, no testimony tied Defendant to that theft or to the particular firearm that was recovered. In rebuttal, the State relied heavily on the burglary victim's testimony that the stolen firearm was returned to him by police the next day. Despite reservations, the district court concluded that it was reasonable to infer that the burglary victim's firearm was stolen "that night" and that the same firearm that was returned to the burglary victim was the firearm recovered by law enforcement after Defendant's arrest.

{11}    As a result, Defendant was committed to NMBHI for up to nine years, "except as otherwise may be provided by law." Defendant appeals.

**DISCUSSION**

{12}    Defendant renews on appeal the challenges that were raised during the commitment hearing. First, Defendant maintains that the State did not meet its burden to prove by clear and convincing evidence that he committed aggravated burglary. Second, Defendant argues that the crime of burglary as defined by Section 30-16-4(B) (armed after entering) is not a "felony that involves the use of a firearm" for the purposes of criminal commitment under Section 31-9-1.5(A), (D). We review the district court's determination under Section 31-9-1.5(D) for substantial evidence, *see State v. Lopez*, 2011-NMCA-071, ¶ 6, 150 N.M. 34, 256 P.3d 977, and to the extent we are

required to construe statutory provisions, our review is de novo, *see id.* ¶ 9. We consider Defendant's second argument first.

## I.   Aggravated Burglary (Armed After Entering) Qualifies as a Felony Involving the Use of a Firearm Under the Circumstances of This Case

**{13}**   As we have noted, Section 31-9-1.5(A) governs the circumstances in which a criminal commitment hearing must be held. After other statutory requirements are satisfied, Section 31-9-1.5(A) requires a criminal commitment hearing if the defendant is charged specifically with certain identified felonies or if the felony that is charged generally "involves" either: (1) "the infliction of great bodily harm on another person"; or (2) "the use of a firearm." In this opinion, we refer to these two circumstances as qualifying conditions. Defendant argues that a criminal commitment hearing under Section 31-9-1.5(A) was not warranted because he completed the crime of aggravated burglary (armed after entering) before the firearm was used in any way. The State responds that this Court has previously construed Section 31-9-1.5(D) and the term "involves" more broadly. We agree with the State.

**{14}**   In *Lopez*, this Court concluded that the district court properly committed the defendant "[b]ecause armed robbery that results in the infliction of great bodily harm on another person is a delineated crime under Section 31-9-1.5(D) and there was sufficient evidence to support the district court's finding that [the d]efendant inflicted great bodily harm on the victim while committing armed robbery." *Lopez*, 2011-NMCA-071, ¶ 1. The defendant struck and beat the victim repeatedly, took the victim's keys to an office, entered the office, and stole money. *Id.* ¶ 3. On appeal, the defendant argued that "Section 31-9-1.5(D) only permits commitment of a defendant who commits a felony containing the infliction of great bodily harm as an element necessary for conviction." *Lopez*, 2011-NMCA-071, ¶ 9. Put another way, the defendant maintained that the "infliction" of great bodily harm had to occur at the same time as the actions necessary to prove the felony. This Court rejected that argument and explained that

> [a] felony can be closely connected, joined, or united with the infliction of great bodily harm even when the felony does not contain the infliction of great bodily harm as an element necessary for conviction, such as in this case in which a felony is committed in a manner that results in great bodily harm to another.

*Id.* ¶ 12. We declined to "equate 'involves' with a phrase such as 'contains as an element'" because the Legislature could have, but did not, use such language. *Id.* This plain language reading of Section 31-9-1.5(D) accomplished the purpose of the Code and the Legislature's intent to confine "dangerous, incompetent defendants," protect the community, and "include, not exclude, the most serious crimes involving the most dangerous defendants." *Lopez*, 2011-NMCA-071, ¶ 13 (internal quotation marks and citation omitted).

**{15}** The plain language analysis of the term "involves" in *Lopez* applies to both qualifying conditions in Section 31-9-1.5 because the term "involves" connects the charged felony with the qualifying conditions. Defendant nevertheless urges us to rely on cases defining the term "use" and contends that Section 31-9-1.5(D) does not apply because he "did not use the gun to commit the burglary" and he could not have used the firearm until after the felony was complete. This argument suggests that the "use of the firearm" must happen during the commission of the felony for Section 31-9-1.5(D) to apply. But the analysis in *Lopez* rejects the argument that the qualifying condition must be an element of the charged felony, *id.* ¶ 12, which necessarily means that the "infliction" of great bodily harm need not happen *during* the commission of the felony. In *Lopez* the infliction of great bodily harm happened *before or during* the time the defendant formed the intent to commit the robbery. *Id.* ¶ 7. Our analysis separated the commission of a felony from whether that felony "involves" the "infliction" of great bodily harm, and we held that a felony could involve great bodily harm "even when the felony does not contain the infliction of great bodily harm as an element necessary for conviction." *Id.* ¶ 12. The key for the *Lopez* Court to support a finding that a felony involved the infliction of great bodily harm was that the defendant "intended to steal the property of the victim while he inflicted great bodily harm." *Id.* ¶ 5. The present case involves the opposite temporal circumstances: the felony happened soon before the use of the firearm. Nevertheless, if the intent to use the firearm was formed during the commission of the felony, Section 31-9-1.5(D) is applicable. Just as great bodily harm can be inflicted in association with a future robbery, as in *Lopez*, so to can a firearm be stolen in order to use it in the future.

**{16}** We see no reason why this Court's conclusion in *Lopez* relating to felonies that involve great bodily harm should not extend to both qualifying conditions set forth in Section 31-9-1.5. The provision includes the word "involves," rather than a more limiting term, and the plain language serves the same legislative policies. Based on *Lopez*, the State must demonstrate that Defendant formed the intent to use the firearm before or during the commission of the burglary. *See* 2011-NMCA-071, ¶¶ 5, 7. As we explain below, the evidence supports a conclusion that Defendant took the firearm and the separate accompanying magazine, which in turn supports a conclusion that Defendant had an intent to put the firearm to use. This is as far as *Lopez* can take us, because the State must also prove "use" and it is in this endeavor that the definition of "use" comes into play.

**{17}** For our purposes in the present case, Defendant's actions as described by the witnesses at the criminal commitment hearing demonstrate that he endangered the safety of others by exhibiting and handling the firearm in a negligent manner. *See* NMSA 1978, § 30-7-4(A)(3) (1993) (describing the negligent use of a deadly weapon). Throughout the early morning hours, Defendant carried the firearm, displayed it, and handled it negligently, if not recklessly. We do not hold that the State must establish that Defendant committed an uncharged crime in order to satisfy the "use" requirement. In the present case, however, Defendant's actions demonstrate "use" as the term has already been defined by our Legislature in Section 30-7-4(A), and importantly, that definition is separate from any definition of "use" that is tied to the facilitation of another

crime. *See State v. Zachariah G.*, 2022-NMSC-003, ¶¶ 3, 15-20, 501 P.3d 451 (adopting a definition for "facilitative use" in the context of "use" to commit another crime). For that reason, we are satisfied that the State established that Defendant "use[d]" a firearm.

**{18}** As a result, commitment under Section 31-9-1.5(D) is permitted if the State also established by clear and convincing evidence that Defendant committed the felony of burglary (armed after entering). We turn to Defendant's arguments on that point.

## II.     The Evidence Supported the District Court's Determination

**{19}** The test for substantial evidence under Section 31-9-1.5(D) "parallels the test for substantial evidence in reviewing a criminal conviction." *Lopez*, 2011-NMCA-071, ¶ 6. We determine whether direct or circumstantial evidence supported the verdict on every essential element and "review the evidence in the light most favorable to the prevailing party, resolving all conflicts and permissible inferences in its favor." *Id.* Our task in the present case is narrow: "We will not substitute our judgment for that of the district court and only determine whether any rational fact[-]finder could have found the essential facts required for conviction." *Id.* (omission, internal quotation marks, and citation omitted). Applying this standard of review, we conclude that the evidence supported the district court's conclusion.

**{20}** To support criminal commitment, the State was required to prove by clear and convincing evidence that Defendant entered a vehicle without authorization with the intent to commit a felony or theft therein . . . [and] after entering, arm[ed] himself with a deadly weapon," *see* § 30-16-4(B), and that this act "involve[d]" the use of a firearm. *See* § 31-9-1.5(D); *Lopez*, 2011-NMCA-071, ¶ 12 (explaining the requirement to prove that the felony "involves" a qualifying condition). We have already addressed the evidence supporting the use of a firearm, and so we consider the evidence supporting the felony. At the criminal commitment hearing, the State established that a firearm was stolen from a vehicle and that Defendant wandered through a residential neighborhood for hours, with a firearm, and handling the weapon. Defendant argues that the State did not prove that Defendant took the gun from the vehicle, because (1) the State's evidence at the commitment hearing suggested three days between the burglary and Defendant's arrest; and (2) the testifying officer could provide no evidence about the firearm that was recovered after Defendant's arrest. Defendant's argument disregards the slim thread of evidence that the district court determined connected Defendant with the firearm stolen from the vehicle.

**{21}** The victim of the burglary testified that he received his firearm back: "I believe the police had found it near him and they returned it to me the following day." As Defendant notes, at the commitment hearing, the State elicited testimony from the burglary victim that the theft occurred on April 23, 2020, and from the other witnesses that the arrest occurred on April 26, 2020. The State argues that the reference to April 23, 2020, was simply a technical error. While we agree—because as we have set forth in the background section, until the commitment hearing, the evidence showed the events

occurred over the course of a single overnight period—the State is still required to prove by clear and convincing evidence that Defendant committed a felony. Looking to that evidence, the burglary victim's testimony that the firearm was found "near him" and returned "the following day," despite the date referenced by the State, is enough evidence for the district court to infer that the weapon recovered after Defendant's arrest was the weapon stolen from the victim's car the night before the arrest. The district court was in the position to weigh the conflicting evidence—the reference to different dates within the State's presentation, including the burglary victim's testimony. Under our standard of review on appeal, we decline to reweigh the evidence or determine that the district court's inference is unreasonable or unfounded. *See Lopez*, 2011-NMCA-071, ¶ 6.

**CONCLUSION**

**{22}** We affirm.[3]

**{23}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**

---

3Defendant filed a motion for expedited review in this Court in order to permit Defendant to be moved to a different facility, which has been made moot by this opinion.