This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41698**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**LOUIS VALDEZ a/k/a
LOUIS E. VALDEZ,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Daylene A. Marsh, District Court Judge**

Raúl Torrez, Attorney General
Walter Hart, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** This matter was submitted to the Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, the Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

**{2}**     Defendant appeals his conviction for aggravated assault upon a peace officer with a deadly weapon on the grounds that the evidence presented at trial was insufficient. [BIC 13] Specifically, Defendant argues that the officer lacked the requisite subjective belief that Defendant was about to intrude on his bodily integrity or personal safety [BIC 14], and he contends that the State failed to prove beyond a reasonable doubt that the officer had an objectively reasonable fear of an immediate battery based on the circumstances [BIC 15]. Defendant also asserts that he never used the crowbar to facilitate the commission of an assault. [BIC 14]

**{3}**     When assessing the sufficiency of evidence, this Court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 (internal quotation marks and citation omitted). "We then determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted).

**{4}**     We look to the jury instructions to determine what the State was required to prove beyond a reasonable doubt. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). The jury was instructed, in relevant part, that in order to find Defendant guilty of aggravated assault upon a peace officer with a deadly weapon, the State was required to prove beyond a reasonable doubt: (1) Defendant's conduct caused the officer to believe Defendant was about to intrude on his bodily integrity or personal safety by touching or applying force in a rude, insolent, or angry manner; (2) a reasonable person in the same circumstances as the officer would have had the same belief; and (3) Defendant used a crowbar. [RP 70] *See* UJI 14-2202 NMRA.

**{5}**     The State presented evidence that Defendant and the officer had an altercation outside of Defendant's residence. [BIC 1-2; AB 2] The officer shined his flashlight towards the house and, seeing nothing that warranted further investigation, began walking back to his patrol car. [BIC 1-2; AB 3] At that point, Defendant exited his residence, holding a crowbar above his head and yelling at the officer to leave. [BIC 1-2] The officer identified himself as a police officer, and although Defendant lowered the crowbar down to his side, Defendant continued to use profanity as he repeatedly shouted at the officer to leave. [BIC 1-3, 5-6; AB 3-4] When Defendant approached the front gate of his property, the officer moved away from Defendant to the other side of a vehicle that was parked in the roadway. [BIC 3; AB 6] While still shouting vulgar language at the officer, Defendant opened the gate to his yard and moved within approximately ten feet of the officer. [BIC 3; AB 6-7] At that point, the officer drew his firearm—testifying that he did so because Defendant still had the crowbar in his hand as

Defendant approached; Defendant's language and conduct was aggressive; the officer felt his personal safety was threatened; and the officer felt that his situational safety had changed when Defendant opened the gate. [BIC 3-4, 6-7; AB 7] The State entered the officer's body camera recording of this interaction into evidence. [BIC 4]

{6}     Viewing the evidence in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict, we conclude that the evidence was sufficient for the jury to conclude that Defendant's conduct caused the officer to reasonably believe Defendant was about to intrude on the officer's bodily integrity or personal safety. [RP 70] The officer testified that, as a result of his interaction with Defendant, he felt fear for his personal safety. [AB 7] Nevertheless, Defendant contends that because he "never impliedly or directly threatened [the officer] with the crowbar, it was unreasonable for the officer to fear an immediate battery." [BIC 10] In support of this contention, Defendant points out that he held the crowbar at his side, was not running or charging at the officer, and did not directly verbally threaten the officer. [BIC 15] In addition, Defendant emphasizes that, at all times, there was either a vehicle or ten feet of space between himself and the officer. [BIC 15; RB 3] We are unpersuaded.

{7}     "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie); *see also State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393 (explaining that "[w]hen a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the jury has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence."). Thus, we defer to the jury's determination regarding the credibility of the officer's testimony and the reasonableness of his fear.

{8}     Defendant also asserts that he never used the crowbar to facilitate the assault. [BIC 14; AB 12] *See State v. Zachariah G.*, 2022-NMSC-003, ¶ 19, 501 P.3d 451 (stating that a facilitative use of a deadly weapon during an assault may be found where (1) a deadly weapon is present at some point during the encounter; (2) the victim knows or has reason to know that the defendant has a deadly weapon; and (3) the presence of the weapon is intentionally used to facilitate the commission of the assault). We are unpersuaded. Given Defendant's verbal statements and Defendant's advance toward the officer, it was reasonable for the jury to determine that Defendant intentionally used the presence of the crowbar to facilitate the assault. *Cf. id.* ¶¶ 25, 27 (concluding, based on the nexus between the deadly weapon and the assault, that facilitative use occurred where verbal threats took advantage of the presence of the weapon); *see* UJI 14-135 NMRA; *State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "circumstantial evidence alone can amount to substantial evidence" and that "intent is subjective and is almost always inferred from other facts in the case" (alteration, internal quotation marks, and citation omitted)); *State v. Michael S.*, 1995-NMCA-112, ¶

7, 120 N.M. 617, 904 P.2d 595 (stating that "[i]ntent need not be established by direct evidence, but may be inferred from the [defendant]'s conduct and the surrounding circumstances").

**{9}** Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to support the jury's verdict beyond a reasonable doubt that Defendant committed aggravated assault upon a peace officer with a deadly weapon. Accordingly, we affirm Defendant's conviction.

**{10} IT IS SO ORDERED**.

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**